GEORGE S. WOODHULL v. THOMAS WHITTLE AND JAMES WHITTLE.

[See 48 Mich. 1.

*Fraudulent conveyances—Deed from son to father—Consideration—Evidence—Credibility of witness.*

1. Where a father had been working for his son and others thirteen or fourteen years, earning good wages, and had been steady, industrious, and economical, rarely spending any money, his wages being received by the son under an agreement to pay interest thereon, and the same being sufficient in amount to form an *adequate* consideration for the conveyance to the father of certain real estate owned by the son, in which transfer there was no fraud,—

*Held*, that such conveyance was not void as to the son's creditors, affirming *State Bank of Fenton v. Whittle*, 48 Mich. 1.

2. Where in such a case the *genuineness* of a note given to the father by the son was denied by the attacking creditors, who claimed that it was *antedated*, the testimony of a witness to the effect that he saw the note several months *after* the conveyance of the

land, and discovered no evidence of its having been folded, and' that it was not *soiled*, and its general appearance was not that of a very *ancient* paper,—

*Held*, that such testimony was not of sufficient *weight* to estab-- lish the alleged fraudulent character of the note, and that the *recollection* of the witness could not be distinct and positive enough to overturn the evidence in favor of its genuineness.

3. Where in such a case the father, a man seventy-eight years old, was sworn to show the transfer a fraud, and his testimony disclosed that he had but little knowledge of passing events, and but a feeble memory of past transactions, and he was unable to state whether he was in Fenton or Flint, where he stayed the previous night, or where he came from, the morning he testified, to the court-room, and could not remember having resided in another county, where it was admitted he had lived for four years,—

*Held*, that no case could be built upon his testimony, his answers showing such an impairment of mind and memory as to render his testimony valueless.

Appeal from Genesee. (Joslin, J., presiding.) Argued October 28, 1886. Decided November 11, 1886.

Bill to set aside conveyance as fraudulent as to creditors. Defendants appeal. Reversed and bill dismissed. The facts are stated in the opinion.

*Clarence Tinker*, for complainant.

*A. U. Wood* and *Durand & Carton*, for defendants.

MORSE, J. The bill in this cause was filed on the nineteenth day of September, 1884, in the Genesee circuit, in chancery, in aid of two executions in favor of the complainant and against Thomas Whittle, alleging that Thomas had transferred the property levied upon to his father, James Whittle, without any consideration, and for the purpose of defrauding his creditors; and that such transfer was fraudulent and void as against complainant, who at their date was a creditor of said Thomas.

The judgments upon which the executions were issued were recovered in 1879 and 1880. The levies under the executions.

were made, one on the fifth day of August, 1879, and the other on the eleventh day of August, 1880.

The deeds of the property in question were executed by Thomas to his father on the twenty-fifth day of January, 1879, and on the seventeenth day of April; the last deed being made to correct a partial description of the lands conveyed by the first deed. The first conveyance was recorded January 27, 1879.

About the time of these levies the conveyances by the son to the father of these lands were attacked in the same court by the State Bank of Fenton. That case came to this Court, and was decided by us against the complainant in that cause. The opinion is reported in 48 Mich. 1 (*State Bank of Fenton v. Whittle*).

It was then declared by this Court, upon a full review of the testimony in the record in that case, that it clearly appeared beyond dispute that James had been working thirteen or fourteen years for his son Thomas and others; that he had been earning good wages, and had been, during all that time, steady, industrious, and economical, rarely spending any money; and that his wages had been received by, or retained by, his son under an agreement to pay interest thereon. In short, that Thomas was honestly indebted to his father at and before the transfer of the property in an amount sufficient to form an adequate consideration for the conveyances, and that there was no fraud in the transfer.

By stipulation in this cause, the evidence in that cause has been used as testimony in this suit, and we have carefully examined it again, with the additional proofs taken since that time.

We find no reason to impair or change the opinion rendered in the case of *State Bank of Fenton v. Whittle*, in our re-examination of the testimony taken in that suit.

It is claimed, however, that the new evidence is of such

63 MICH.—37.

weight and character as to throw new light upon the transaction, and to show conclusively that the transfer was made by Thomas for the express purpose of defrauding his creditors, and that the father, who, in this case, is a witness sworn on behalf of the complainant, and who has never testified before, knew nothing of such transfer, and had no part in it, and was never aware of any debt existing from Thomas to him, or the making or receiving of the notes claimed to have been delivered by Thomas to him in settlement of such indebtedness at different times before the transfer of the property in payment thereof.

The note of $2,700, the genuineness of which was attacked in the other case, and declared by this Court, upon inspection and the evidence as to its surroundings, to have been without doubt executed at the time of its date, is again assailed.

One H. C. Van Atta, who, at the time of the matter of which he testifies, was the attorney of Thomas Whittle, is sworn as a witness upon the part of the complainant in this case to rebut the presumption of the note being executed at the date it bears, March 2, 1876. He testifies that he saw the note on several occasions, but he cannot give the exact time he first saw it.

It was brought to him by Thomas Whittle, as he thinks, several months after the transfer. He was asked whether the paper was dirty and folded, as it was when shown him upon the trial. His answer was: "My recollection is, when Mr. Whittle brought it to me, that I discovered no evidence of its having been folded or creased."

"*Q.* About its being dirty at that time?
"*A.* I don't think it was dirty.
"*Q.* Nothing of the kind?
"*A.* Nothing that I noticed.
"*Q.* Will you state what was the appearance of the ink at the time you saw it?
"*A.* I don't remember as I noticed particularly the

appearance of the ink. The general appearance of the paper was as though it was not a very ancient paper."

This evidence was objected to for the reason that at this time the witness was the attorney of Thomas Whittle and James in a suit involving the genuineness of this note, and that his knowledge of it was brought to him by Thomas under the protection of the confidential relations thereby existing between them. Without passing upon this objection, we are all agreed that this testimony, if permitted to stand, is not of sufficient weight to establish the fraudulent character of the paper. All the testimony tends to show that James Whittle made no use of his earnings or property except to allow his son to collect or receive them; that he did no business on his own account, but contented himself with working hard, and spending little, if anything. That the note was not folded or dirty three years after it purported to be given is not by any means conclusive evidence that it was not so given. If laid away without folding, as it was liable to be by a man unaccustomed to business, as James Whittle was, and not handled or carried around, there is no reason why it should bear a very ancient appearance. After being inspected in the several lawsuits which grew out of this transaction, it would soon, no doubt, become dirty. Besides, the recollection of Van Atta is not and could not be distinct and positive enough to overturn the evidence in favor of its genuineness.

There seems to be no force in the other evidence, not given in the case of *State Bank of Fenton v. Whittle*, to impeach the *bona fides* of these conveyances from the son to the father. From the evidence of the son it appears that he has handled and managed his father's property, as he naturally would, considering the age of the old man and his habits of life.

Much reliance is placed upon the testimony of James Whittle, now taken for the first time, to show the transfer to be a

fraud. We consider it entirely worthless for that purpose. His evidence shows him to be seventy-eight years of age, with but little knowledge of passing events, and but a feeble memory of past transactions. He did not know, while upon the stand, whether he was in Fenton or Flint, where he stayed the night before, or where he came from that morning to the court-room. He could not remember that he had ever lived away from Fenton, or resided in Benzie county, where it was admitted he had lived the last four years of his life previous to the month of May, 1885. He could recollect a little of what happened in his early days, but seemed to have absolutely no memory in reference to the recent events of his life. No case can be built upon his testimony.

Stress is laid upon the fact that he was not sworn in his own defense or behalf in other suits in which he was involved about the time of this transfer, as having a tendency to show that Thomas did not dare to use him as a witness to bolster up the good faith of the conveyances, for fear that he might testify, as he now does, to no knowledge of the transactions claimed to have passed between the father and son showing an indebtedness to the one from the other. But the suspicion that might be engendered by the failure to produce him as a witness cannot be used as evidence to establish fraud, or to overturn the evidence of other facts—and they are many —coming from the mouths of disinterested witnesses showing the good faith of the transaction.

If the complainant had filed his bill at the time of his levy, instead of waiting four or five years thereafter, and pushed his case to a hearing, and taken the testimony of James Whittle before he was an acknowledged imbecile, when his memory might have been worth something, the result might have been different. As it is, we can give no credence to any of his statements. His answers show his mind and memory so impaired that there is absolutely no value in his testimony, and no reliance to be placed upon it.

The decree of the court below must be reversed, and the complainant's bill dismissed, with costs of both courts.

The other Justices concurred.