(108 So. 456)

BROTHERHOOD OF RAILROAD TRAINMEN v. BARNHILL. (6 Div. 634.)

(Supreme Court of Alabama. April 8, 1926. Rehearing Denied May 13, 1926.)

1. Evidence ☞357—Letter informing strikers that failure to report for other employment would result in cutting off further payment of strike benefits held admissible in action for breach of contract to pay such benefits.

In action against trade union for breach of contract to pay strike benefits, letter signed by defendant's general chairman, urging plaintiff and other strikers to report to named person for other employment, and informing them that failure to do so would result in cutting off further payment of benefits, held admissible.

2. Evidence ☞129(1)—Testimony as to whether other strikers were engaged in employment similar to that of one suing for breach of contract to pay strike benefits, and had secured similar employment since strike pay was discontinued, held admissible to disprove arbitrary classification or application of union's rules to those similarly situated.

In action against trade union for breach of contract to pay strike benefits, testimony as to whether other strikers were engaged in employment similar to that of plaintiff at time of strike, and had secured similar employment since strike pay was discontinued, held admissible as tending to disprove arbitrary classification or application of union's rules to those similarly situated.

3. Damages ☞62(4)—Ordinarily one should save himself from loss by contract breach, if possible at reasonable expense or exertion.

Ordinarily, where party can save himself from loss from breach of contract at reasonable expense or with reasonable exertions at like employment in same community or locality within time embraced in suit for breach, it is his duty to do so, and he can charge parties in default only with damages he could not prevent by reasonable endeavor and expense.

4. Trade unions ☞1—Accumulation of fund reasonably necessary to lawfully conduct strike is proper object of voluntary labor organization.

Accumulation of reasonable fund necessary for lawful conduct of strike by voluntary association of workingmen is proper object of such a labor organization.

5. Trade unions ☞3—Terms of contract with members, respecting their classification, are determinable by constitution and by-laws when membership began and as lawfully amended, modified, and extended thereafter by union's duly constituted authorities under applicable state laws.

Terms of contract between trade union and its members, respecting latters' classification, must be determined by its constitution and laws when membership began and as thereafter lawfully amended, modified, and extended by its duly constituted authorities under applicable state laws.

**6. Constitutional law ⊛⊸278(1), 324, 328—Constitutional guaranty of open courts, due process and administration of justice, without sale, denial, or delay, does not negative due effect of general contract rights of members and officials of mutual benefit brotherhood in lawful accumulation, protection, and distribution of properties to legitimate ends attained within brotherhood and state law (Const. 1901, § 13).**

Const. 1901, § 13, as to open courts due process, and administration of justice, without sale, denial, or delay, does not negative due effect of general contract rights of members and officials of mutual benefit brotherhood in lawful accumulation, protection, and distribution of properties to legitimate ends attained within law of brotherhood and not contrary to state law.

**7. Trade unions ⊛⊸9 — Lex fori of suit for breach of contract by trade union with Grand Lodge headquarters in another state to pay strike benefits suspended by national officers, as authorized by general rules, held not within state.**

Lex fori of parties to suit against trade union with Grand Lodge Headquarters in Ohio for breach of contract to pay strike benefits, payment of which was suspended by national officers, as authorized by general rules of union, *held* not within state.

**8. Contracts ⊛⊸2.**

Contract, good where made, is good everywhere.

**9. Trade unions ⊛⊸3—While one party to contract cannot be judge of his own cause, trade union may adopt laws for its government to be administered by it to its members, on whom provisions making decisions of its officials and tribunals conclusive in respect to strike fund and benefits are conclusive, in absence of fraud, so long as they recognize union's authority and law (Const. 1901, § 13).**

While it would be contrary to Const. 1901, § 13, and legal maxim that one cannot be person acting and person acted on at same time, to allow one party to contract to be arbiter or judge of own cause in action for breach thereof, labor organizations operating for their members or reasonable classifications thereof may adopt laws for their government, to be administered by themselves to members, and, in absence of fraud, provision thereof making decisions of their officials and tribunals conclusive in respect to strike fund and benefits are conclusive on members, who are bound by union's authority and law so long as they choose to recognize it.

**10. Trade unions ⊛⊸9—Trade union, sued for breach of contract to pay strike benefits, discontinued by officials duly authorized by constitution and by-laws, held entitled to affirmative instructions.**

Trade union, sued for breach of contract to pay strike benefits, payment of which was discontinued by order of its duly authorized officials, *held* entitled to affirmative instructions, in view of constitution and by-laws considered under general issue.

Appeal from Circuit Court, Jefferson County; R. V. Evans, Judge.

Action by T. L. Barnhill against the Brotherhood of Railroad Trainmen. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Code 1923, § 7326. Reversed and remanded.

Altman & Taylor and Fred G. Koenig, all of Birmingham, for appellant.

Where a party entitled to benefits of a contract can save himself from loss arising from a breach thereof at reasonable expense, or with reasonable exertions, it is his duty to do so, and he can charge the parties in default with such damages only as with reasonable exertions and expense he could not prevent. Sedgw. on Dam. (7th Ed.) 56; Wilkinson v. Black, 80 Ala. 329; Strauss v. Meertief, 64 Ala. 299, 38 Am. Rep. 8; Holloway v. Talbot, 70 Ala. 389; 17 C. J. 767, 770, 771, 775. Where the constitution of a fraternal benefit association confers on the president the power to interpret the provisions of the constitution, his decision to be final unless reversed by the board of directors or the Grand Lodge, such interpretation is binding upon the members, in absence of reversal as provided. Donnelly v. Supreme Council, 106 Md. 425, 67 A. 276, 124 Am. St. Rep. 499; Anacosta Tribe v. Murbach, 13 Md. 91, 71 Am. Dec. 625; Van Poucke v. Netherland, 63 Mich. 378, 29 N. W. 863; Black & White Soc. v. Vandyke, 2 Whart. (Pa.) 309, 30 Am. Dec. 263; Rood v. Railroad, etc. (C. C.) 31 F. 62; Wuerthner v. Workingmen's Benev. Ass'n, 121 Mich. 90, 79 N. W. 921, 80 Am. St. Rep. 484. A stipulation in the constitution, making the decisions of the association's own tribunal conclusive, is binding on members in the absence of fraud. Rood v. Railway, etc., Mutual, 31 F. 62; Berlin v. Eureka Lodge, 132 Cal. 294, 64 P. 254; Delaware Lodge v. Allmon, 17 Del. 160, 39 A. 1098.

Walter S. Smith, of Lineville, for appellee.

Those who labor for wages have a right to strike when the object of the strike is for their collective benefit and is lawful. Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Robison v. Hotel Local, 35 Idaho, 418, 207 P. 132, 27 A. L. R. 648. The accumulation of a strike fund for the benefit of striking members is one of the objects of a labor organization. Martin's Mod. Law of Labor Unions, 17; Hitchman Coal Co. v. Mitchell (C. C.) 172 F. 963. Damages for failure or refusal to pay strike benefits are fixed by the law of the contract the moment it is broken, and are not subject to be minimized by failure of a striking member to exercise ordinary diligence to procure other employment. 8 R. C. L. 445; 17 C. J. 775; Sullivan v. McMillan, 37 Fla. 134, 19 So. 340, 53 Am. St. Rep. 239;

---

⊛⊸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Hollerbach v. Wilkins, 130 Ky. 51, 112 S. W. 1126; Simon v. Levinson (Sup.) 126 N. Y. S. 659; Strauss v. Meertief, 64 Ala. 299, 38 Am. Rep. 8. Unincorporated labor organizations have no power to adopt constitutions and by-laws providing that the decision of the president of the organization or tribunal of the organization shall be final. Martin's Mod. Law, etc., 284, 336; G. I. B. L. E. v. Green, 210 Ala. 496, 98 So. 569; Const. Ala. 1901, § 13; Sparks v. McCreary, 156 Ala. 382, 47 So. 332, 22 L R. A. (N. S.) 224.

THOMAS, J. The trial was had on the common counts, and count 7, added by way of amendment. It is averred in the latter count that plaintiff was a member of defendant order, and that defendant contracted with plaintiff at the time he became a member, as such employee of said railway company "and as a striking member of said brotherhood to pay plaintiff strike benefits or strike pay" at the rate indicated, being, after the first year, "$100 per month" "so long as said strike should last;" that all strike benefits due plaintiff from March 5, 1921, until September 5, 1923, were paid. It is further averred in said count:

"Plaintiff avers that he has continued to strike as one called out on said strike from to wit, March 5, 1921, until the present time, and he is still out on said strike, and he avers that said strike has not yet been officially terminated by defendant, and plaintiff avers that defendant has breached said contract in that defendant has failed or refused to pay plaintiff strike benefits or strike pay at the rate of $100 per month from September 5, 1923, to July 5, 1924, although plaintiff has fully performed his part of said contract, and is still ready, able, and willing to perform same; hence this suit."

The sustaining of demurrers to pleas hereafter to be indicated is assigned as error.

Defendant filed to said counts, separately and severally, pleas of the general issue and special pleas to which demurrers were overruled—plea 1, the general issue, and 2 and 4 setting up the rules of the order as to strike benefits. Pleas 2 and 4 being withdrawn, the trial was upon said counts and special count 7, to which were interposed the pleas of the general issue.

A prima facie case was made out by the testimony of the plaintiff, who testified that from September 5, 1923, until July 5, 1924, he knew of no position open to him as a striking member and as foreman or switch engine foreman, either in Alabama or Georgia. Plaintiff further testified that he made effort and failed to get work in the spring of 1923 in Birmingham. In response to the question whether or not he knew of any job witness could get between September 5, 1923, and July, 1924, he said that during that time he "made no effort to get any work" himself.

The trial court permitted defendant to show that plaintiff was engaged in agricul-tural pursuits during the period for which he claims strike benefits, and to show by Hunter, Meeks, Wade, and Bruce that plaintiff could have obtained other employment in Alabama, Georgia, or other states.

The plaintiff offered in evidence the following resolution, which the defendant's witness Bruce testified was passed by the Triennial Convention at Toronto, Canada:

"Be it further resolved that the president and the board of trustees be authorized and instructed by this convention to pay the members of the Brotherhood on strike on the Atlantic, Birmingham & Atlantic Railway, the Missouri & North Arkansas Railway, and the Dominion Iron & Steel Company, and the Nova Scotia Steel & Coal Company's properties, $100 per month for the duration of said strikes and made retroactive to January 1, 1922."

Thereupon the said witness Bruce testified upon redirect examination:

"We have a bureau of employment for members of the Brotherhood of Railroad Trainmen. Under our arrangements with the railroads it is my business in that bureau to get employment for the members. That is what my bureau does. Oh, yes; the members sometimes get jobs without any assistance. There was no trouble in 1923 and 1924 to get jobs. The bureau functions pretty generally all over the country."

The bill of exceptions then recites:

"On recross-examination, the said witness testified, in substance, as follows:

"'My bureau is not provided for by the constitution and general rules of the Brotherhood of Railroad Trainmen. We operate all over the country, in so far as we possibly can. We operate in Alabama and Georgia. We are a part of the brotherhood's arrangement or institution. The bureau is not independent of the brotherhood.

"Q. There is no provision in the constitution for it, is there? A. I don't care; we are a part of it. There is a lot in the by-laws for a lot of things the brotherhood does, Mr. Smith. The bureau is not mentioned in the rules. There is no such provision.'"

Defendant had theretofore offered in evidence the letter of June 27, 1923, which letter was excluded upon plaintiff's objection, and the following circular:

"Manchester, Ga., Oct. 1, 1923.

"All Members and Others on Strike Trainmen's Pay Roll—Dear Sirs and Brothers: Acting on the instructions of the president of the Grand Lodges, the general committees convened at Grand Lodge headquarters, Thursday and Friday September 27th and 28th, for the purpose of meeting the board of trustees and to take action toward terminating the legal strike on the A. B. & A. property, which was called March 5, 1921.

"After going into the situation thoroughly with the board of trustees and discussing every angle of the case, the following understanding was agreed upon and is herein quoted for the information of all concerned:

"'The undersigned met at Grand Lodge Headquarters at 9:30 a. m., September 27, 1923. In

accordance with General Rule 10, p. 73, lines 45 to 54, reading: "The president and general grievance committee of board of adjustment have the authority to terminate a strike, but, in the event of a difference of opinion, and upon application of either party, it shall be the duty of the board of trustees immediately to meet with the president and general grievance committee or board of adjustment and decide the question, and the decision of the board of trustees shall be final and binding."

" This strike became effective March 5, 1921, and has been in effect two years and seven months. There were originally 116 members, 11 nonmembers, and 45 negroes in the service represented by our brotherhood, making a total of 172 men on our first pay roll. This number has been reduced to 65 members as of September 5, 1923, and the strike has cost our brotherhood $361,444.55 up to date. .

" There were 14 organizations who participated in this strike originally, a majority of whom have either voted to declare the strike off or have not paid strike benefits to their membership, and who have, in effect, virtually ceased to prosecute the strike. The only organizations that have recently paid strike benefits are the four transportation organizations and the Order of Railroad Telegraphers. The files of the president's office indicate that the latter organization has decided to discontinue paying strike benefits to its membership as of September 30, 1923, also to discontinue the disbursement of any funds to further prosecute the strike. The files also indicate that the B. of L. F. & E. board of directors has voted to terminate the strike jointly with the other organizations. The chief executive of the B. of L. E. will in the near future place the matter before his advisory board. President Shappard of the O. R. C. has advised the undersigned that he has authority, and it is his intention, to discontinue paying strike benefits as of September 30, 1923, but that he is agreeable to continuing the strike.

" The general committee stated to the board of trustees that the members and others of our class carried on our pay rolls have been advised by letter and in person by the committee on two different occasions that work could be secured by the striking members of this road by applying to our Chicago employment bureau and at other points, and many of them have obtained other gainful employment; therefore their names should no longer be carried on the pay rolls as striking members.

" The following named members, on account of temporary physical disability, have practically no means of support, and, because of their disability, have not been able to obtain other employment, and it was therefore agreed that they should be continued on the pay roll until otherwise decided: D. Y. Millican, of Fitzgerald; O. C. Tyre, of Fitzgerald; A. L. Greene, of Manchester; H. L. Cook of Manchester (has filed benevolent claim); F. Smith, of Atlanta.

" In addition to the above-mentioned disabled members, it is agreed that the third committeemen named shall be carried on the pay roll; that is, Brother Hunter, representing the men at Manchester, Brother Meeks, at Fitzgerald, and Brother Wade, at Atlanta, for the purpose of further prosecuting the strike as best they can. It is further agreed that the Grand Lodge shall bear reasonable expenses of the committeemen, such as typewriting, telegraphing, stationery, and postage. It is also understood that the Grand Lodge shall bear the traveling expenses of the committeemen en route to Cleveland and return; that is, railroad and pullman fare, and hotel bill, but not including any salary, upon their furnishing proper receipts, as provided for by our laws.

" 'It is the decision of the board of trustees that the interests of the brotherhood will be conserved by continuing the strike in effect for the time being under the foregoing conditions, and we trust that it will meet with your approval.

.  " '[Signed by board of trustees].

" 'Fraternally yours,

" '[Signed.]                    E. J. Hunter,

                       " 'L. Meeks,

                       " 'R. W. Wade,

" 'A. B. & A., G. G. C., B. of R. T.' "

[1, 2] The letter of August 7, 1923, admitted in evidence, was identified as copy of original sent to plaintiff. Error is assigned for the rejection as evidence of the letter of June 27, 1923, signed by the general chairman, urging plaintiff and other striking members to report to Bruce for other employment, and informing them that the failure to so report "would result in cutting off further payment of strike benefits." We shall see that the rejection of this evidence was in error. The witness Meeks testified that he was chairman of the committee at Fitzgerald, Ga., and a member of the general grievance committee; knew that plaintiff was at work and went out when the strike was inaugurated; that there were something like 40 members "who went out" on strike. He was asked by defendant:

"I will ask you, Mr. Meeks, to state whether or not any of these members, those 40 members you referred to, or forty odd members, were engaged at the time of this strike in similar employment to that which Mr. Barnhill was engaged in at the time of the strike, and whether or not they have, since September 1923, when the strike pay was discontinued, secured similar employment?"

Plaintiff's objection was sustained, and exception reserved by defendant. In this ruling there was error. The evidence tended to show there was no arbitrary classification or like application of the rules of the brotherhood to those similarly situated.

Defendant's counsel condense the following facts from the evidence: That on March 5, 1921, plaintiff was a member of the Brotherhood of Railroad Trainmen, an unincorporated association, and was a member of A. B. & A. Lodge (which is a subordinate lodge of said brotherhood) and had ever been a member since he joined it in the fall of 1913, and had paid all dues and assessments, and had never been in arrears; that prior to March 5, 1921, he was employed by the Atlanta, Birmingham & Atlantic Railroad

strike was inaugurated by the Brotherhood of Railroad Trainmen against the said railroad company, and that plaintiff went out on said strike as a member of said A. B. & A. Lodge; that at said time he was working for said company at Fitzgerald, Ga., and the strike was under the direction and approval of defendant; that all classes of employees (including plaintiff) who were members of the brotherhood and working for the said railroad company were called out on said strike by the defendant; that defendant had a constitution and general rules or by-laws for the government of its membership and subordinate lodges, maintained a strike or protective fund, collected from the membership of the subordinate lodges and deposited with the Grand Lodge, and that all members (including plaintiff as a beneficiary member) of the subordinate lodges contribute to this fund in the uniform assessment required therefor. Pertinent general rules or by-laws of the brotherhood are set out in the evidence.

It is further shown by the evidence that the defendant paid plaintiff his strike pay from March 5, 1921, to September 5, 1923, and that since the last-named date defendant has not paid plaintiff any strike benefits, for the reason stated in the report of the Atlanta, Birmingham & Atlantic Railroad Company's General Committee and the board of trustees of the defendant brotherhood. A pertinent paragraph of this report is:

"Our general committee, composed of general chairman, E. J. Hunter, of Manchester, Ga., secretary, L. Meeks, of Fitzgerald, Ga., and Brother R. W. Wade, of Atlanta, Ga., stated to the board of trustees that the following named members of lodge No. 767 have been advised on two different occasions, by letter and by personal instructions by the committeemen that work could be secured by the striking members of this road by applying to our Chicago employment bureau and at other points, and many of them have obtained other gainful employment, therefore their names should no longer be carried on the pay roll as striking members" (then following the names of several of the members of the lodge of which plaintiff was a member, including plaintiff's name, and then the names of Millican, Tyre, Greene; McCook, and Smith on the pay roll, because of physical disability which prevented them from taking other employment continued on pay roll).

[3] It is a general rule of ordinary contracts that, where a party entitled to benefits can save himself from loss arising from a breach thereof at reasonable expense or with reasonable exertions, and at like employment in the same community or locality, and within the time embraced in the suit, it is his duty to do so, and he can charge the parties in default with such damages only as with reasonable endeavor and expense he could not prevent. Navco Hardwood Co. v. Bass (Ala. Sup.) 108 So. 452;[1] Wilkinson v. Black,

80 Ala. 329; Strauss v. Meertief, 64 Ala. 299, 38 Am. Rep. 8; Holloway v. Tolbot, 70 Ala. 389; W. U. T. Co. v. Jackson Lbr. Co., 187 Ala. 629, 65 So. 962; Warten Cotton Co. v. McGuire, 206 Ala. 469, 91 So. 308; Ala. N. R. Co. v. Hoge, 207 Ala. 692, 93 So. 517; People's Shoe Co. v. Skally, 196 Ala. 349, 71 So. 719; U. S. Shipping, etc., Co. v. Sherman, 208 Ala. 83, 93 So. 834; 17 C. J. p. 770, §§ 97, 99, page 767, § 96, page 775, § 100.

We are not impressed with the view that the foregoing general rule can be applied to a beneficiary and striking member of the brotherhood if he has acquired certain and continuing benefits or vested rights in the common fund during the period he is called out on a general strike. However, to a determination of this question a further consideration of the relation of the contracting parties in the premises will be necessary.

[4] The Supreme Court of the United States has dealt with the right of those who labor for wages to strike or conduct a strike in the remedying of their grievances when that object is lawful and for the collective benefit of the order or association. Amer. Steel F. v. Tri-Cities F. Council, 257 U. S. 184, 209, 42 S. Ct. 72, 66 L. Ed. 189, 199, 27 A. L. R. 360; Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Adair v. United States, 208 U. S. 161, 28 S. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas. 764, 27 A. L. R. 648. And to this end the accumulation of a reasonable necessary strike fund, and to lawfully conduct the strike by a voluntary association of working men, is one of the proper objects of such a labor organization. Hitchman Coal & Coke Co. v. Mitchell (C. C.) 172 F. 963, 966; Thomas v. C. N. O. & T. P. Ry. Co. (C. C.) 62 F. 803; Hopkins v. Oxley Stave Co., 83 F. 912, 28 C. C. A. 99, 104; Arthur v. Oakes, 63 F. 310, 11 C. C. A. 209, 217, 25 L. R. A. 414; Springhead Spinning Co. v. Riley, L. R. 6 Eq. 551; 25 L. R. A. 414.

[5] What then of the nature of the contract obligations of the parties to the suit as to or as affecting the common fund made the subject of this suit? The terms of a contract between the brotherhood and its members as respects a valid and effective classification of its members are to be determined by the constitution and laws of the brotherhood as they existed when the membership began, and as the constitution and by-laws may thereafter be lawfully amended, modified, and extended by the duly constituted authorities of the brotherhood and under the laws of the state having application. Martin's Law of Labor Unions, §§ 150, 287; Woodmen of the World v. Alford, 206 Ala. 18, 25, 89 So. 528; Ex parte Mosaic Templars of America, 212 Ala. 471, 103 So. 65.

[6] Does the provision of the general rules of the brotherhood offend provisions of the Constitution of the state? The provisions of the Bill of Rights are that all courts shall be

---

[1] Ante, p. 553.

open and every person for any injury done him in lands, goods, person, or reputation shall have a remedy by due process, and right and justice shall be administered without sale, denial, or delay. Const. § 13; Sparks v. McCreary, 156 Ala. 382, 47 So. 332, 22 L. R. A. (N. S.) 1224; Sloss-Sheffield S. & I. Co. v. Greek, 211 Ala. 95, 99·So. 791. It must be conceded that this provision of our Constitution does not negative the due effect of the general contract rights of the parties as members and officials of a mutual benefit brotherhood in the lawful exercise of authority in the due accumulation, protection, and distribution of the properties, to the legitimate ends to be obtained within the law of the brotherhood not contrary to the law of the state.

The freedom of the right of lawful contract, the sustaining of agreements for inspection, arbitration, and award in matter of controversy, and submission to the constructions and estimates of architects and engineers as arbiters in the premises, have been familiar subjects of judicial decision, and held not to infringe upon the foregoing provisions of organic law. George v. Roberts, 207 Ala. 191, 92 So. 1; Id., 186 Ala. 521, 65 So. 345; Shriner v. Craft, 166 Ala. 146, 158, 51 So. 884, 139 Am. St. Rep. 19, 28 L. R. A. (N. S.) 450; Abercrombie v. Vandiver, 126 Ala. 513, 28·So. 491; 6 Cyc. pp. 40–45.

Is then the provision of the rule of the brotherhood for the protection of the fund offensive to the law as ordained, declared, or announced in this state? The insistence of counsel for appellee is that the constitution and by-laws of the brotherhood to the effect, as we have indicated, is beyond the power of such unincorporated organization, providing, as it does, that the decision·of the president of the organization or their own tribunals shall be final, failing to take due consideration of section 13 of the Constitution of this state as affecting plaintiff's rights; that is to say, the making of such official the sole arbiter or judge of disputes with members of the organization is void in the attempt to clothe such official or officials, or its duly constituted tribunal, with the functions of sovereign power, which only the courts can exercise. The case of Grand I. B. L. E. v. Green, 210 Ala. 496, 98 So. 569, and Martin's Mod. Law of Labor Unions, §§ 284, 336, are cited as authority.

We may consider the general authorities on the question. In Donnelly v. Supreme Council, 106 Md. 425, 67 A. 276, 124 Am. St. Rep. 499, it was declared:

"It is competent for the members of a benefit society to agree that questions arising between them and the order relating to property rights may be referred to and settled by tribunals established within the order, and courts will not undertake to inquire into the regularity of the procedure adopted and pursued by those tribunals in reaching their conclusions. Where the tribunals of a benefit society have power to decide a disputed question, their jurisdiction is exclusive, whether there is a by-law stating such decision to be final or not, and courts cannot be invoked to review their decisions of questions coming properly before them, except in cases of fraud. This is true whether the member does·not press his claim at all before the tribunals of the order, or whether he carries it through the final tribunal, or whether he goes through only a part of the hearings which he might have in the order. It is the existence of a tribunal, properly erected and charged with the duty of determining the rights of the members as between themselves and the order, which is a bar to a suit in court of a member against such order in regard to any question so confided to the tribunals of the member's own choice."

See, also, Judge Freeman's notes to this case and the cases of Anacosta Tribe v. Murbach, 13 Md. 91, 71 Am. Dec. 625, 626, 627; Road v. R. P. & T. Cond. (C. C.) 31 F. 62; Van Poucke v. Netherlands, 63 Mich. 578, 29 N. W. 863. In Wuerthner v. Workingmen's Ass'n, 121 Mich. 90, 79 ·N. W. 921, 80 Am. St. Rep. 484, the declaration was made that a finding by the tribunal of a benevolent society that a member is not entitled to sick benefits cannot be rendered conclusive to preclude resort to courts, by reference to a custom of the society, when there is nothing in the constitution or by-laws which so provided.

Mr. Martin in his Treatise on the Law of Labor Unions (1910) p. 361, § 284, said there was a difference of opinion to be found in the decisions of the courts as to the power of such associations to make final the decisions of their domestic tribunals on claims of members. He gives the two views as follows:

"In support of the view that these associations have the power through the provisions of their constitutions and by-laws to make the decisions of their own tribunals conclusive in respect of claims for benefits, it is said that these are private beneficial institutions, operating on the members only, who for reasons of policy, and convenience affecting their welfare, and perhaps their existence, adopt laws for their government, to be administrated by themselves, to which every person who joins them assents; that they require the surrender of no right that a man may not waive, and are obligatory on him only so long as he chooses to recognize their authority [Anacosta Tribe v. Murbach, 13 Md. 91, 71 Am. Dec. 625]; and that it would very much impair the usefulness of institutions of this kind if they were to be harassed with petty litigation involving claims for benefits, and render the tribunals of the order practically useless [Donnelly v. Supreme Council, 106 Md. 425, 67 A. 276, 14 Am. St. Rep. 499; Anacosta Tribe v. Murbach, 13 Md. 91, 71 Am. Dec. 625]. On the other hand the decided weight of authority, and of reason too, is that these associations have no power to adopt constitutions and by-laws providing that the decisions of their own tribunals in respect of claims of members for benefits shall be final. Grimbley v. Harrold, 125 Cal. 24, 57 P. 558, 73 Am. St. Rep. 19; Levy v. Magnolia Lodge, 110 Cal.

297, 42 P. 887; Supreme Council v. Forsinger, 125 Ind. 52, 25 N. E. 129, 9 L. R. A. 501, 21 Am. St. Rep. 196; Supreme Council v. Garrigus, 104 Ind. 133, 3 N. E. 818, 54 Am. Rep. 298; Bauer v. Samson Lodge, 102 Ind. 262, 1 N. E. 571; Gasser v. Sunfire Office, 42 Minn. 315, 44 N. W. 252; Whitney v. National Ass'n, 52 Minn. 378, 54 N. W. 184; Zeliff v. Grand Lodge, 53 N. J. Law, 536, 22 A. 63; Myers v. Jenkins, 63 Ohio St. 101, 57 N. E. 1089, 81 Am. St. Rep. 613; Sweeney v. Ben. Soc., 14 Wkly. Notes Cas. (Pa.) 466; Daniher v. Grand Lodge, 10 Utah, 110, 37 P. 245; Edwards v. Ins. Soc., L. R. 1 Q. B. Div. 563. The reasons in support of this view may be summarized as follows:

First. To hold that the decision of a tribunal of the association is conclusive is in effect making one of the parties to a dispute a final judge of its own cause. Railway Passenger & Freight Conductors' Mut. Aid & Ben. v. R. P. & F. C. Mut. Aid & Ben. Ass'n, 147 Ill. 138, 35 N. E. 168; Supreme Council v. Forsinger, 125 Ind. 52, 25 N. E. 129, 9 L. R. A. 501, 21 Am. St. Rep. 196. Second. To hold that the association can create a tribunal to settle disputes between it and its members and make the decision of such tribunal final, would be to clothe it with the functions of sovereign power which alone can create legal tribunals (Bauer v. Samson Lodge, 102 Ind. 262, 268, 1 N. E. 571; Myers v. Jenkins, 63 Ohio St. 101, 57 N. E. 1089, 81 Am. St. Rep. 613; Daniher v. Grand Lodge, 10 Utah, 110, 37 P. 245), and authorize it to forfeit or confiscate property, a right forbidden to be exercised by Congress or the Legislature of any state (Wicks v. Monihan, 130 N. Y. 232, 29 N. E. 139, 14 L. R. A. 243). Third. It is not competent for parties, in advance of any dispute to oust the jurisdiction of the courts by an agreement that the decision of persons named therein shall be final and conclusive. Such an agreement is void. Supreme Council v. Forsinger, 125 Ind. 52, 25 N. E. 129, 9 L. R. A. 501, 21 Am. St. Rep. 196; Louisville, etc., R. C. v. Donnegan, 111 Ind. 179, 12 N. E. 153; Supreme Council v. Garrigus, 104 Ind. 133, 3 N. E. 818, 54 Am. Rep. 298; Bauer v. Samson Lodge, 102 Ind. 262, 1 N. E. 571; Kistler v. Indianapolis Co., 88 Ind. 460; Reed v. Washington Ins. Co., 138 Mass. 572; Myers v. Jenkins, 63 Ohio St. 101, 57 N. E. 1089, 81 Am. St. Rep. 613."

Again that author concludes as follows (page 407, § 336):

" * * * In jurisdictions where the view is taken that the determination of the domestic tribunal is final on claims of members for benefits against the union, if the constitution and by-laws so provide, but not otherwise, a member whose claim for benefits has been decided adversely to him may resort to the courts for its enforcement if there is no express provision making the determination of the domestic tribunal final, but, if such provision exists, he cannot successfully resort to the courts, in the absence of any showing of fraud on the part of the tribunal which passed on the claim. So in jurisdictions where the view is taken that if the domestic tribunal is vested with power to hear and determine claims of members for benefits, its determination is final, whether or not there is any express provision to that effect, a member cannot in the absence of fraud invoke the aid of the courts against an adverse decision on a claim for benefits by a domestic tribunal vested with power to hear and determine the claim, and it makes no difference whether or not provisions exist declaring that such decision shall be final. * * * "

Unless the case of Grand I. B. L. E. v. Green, 210 Ala. 496, 98 So. 569, has touched upon this rule, the same is an open question in this state, under the provisions of section 13 of our Bill of Rights, if the latter can be applied to the fund to be maintained in another jurisdiction.

The constitution exhibited among other things recites that the brotherhood was organized in New York in 1883, the constitution amended at the convention held in Columbus, Ohio, in 1919; that the headquarters of the Grand Lodge shall be located in Cleveland, Ohio, unless otherwise ordered by any regular or special session of the lodge; that the organization known as the Brotherhood of Railroad Trainmen shall consist of "one Grand Lodge" and of such subordinate lodges as may hold legal and unreclaimed charters granted by the Grand Lodge. The officers and members of the Grand Lodge are thus provided for:

"Section 2. The Grand Lodge shall consist of a president, assistant to the president, eight vice presidents, general secretary and treasurer, editor and manager of the official publication, a national legislative representative, who is a vice president, a board of directors, consisting of the president, assistant to the president, three senior vice presidents, general secretary and treasurer, editor and manager, national legislative representative, and chairman of the board of trustees, a beneficiary board, consisting of the president, assistant to the president, and general secretary and treasurer, a board of trustees, consisting of three members, an executive board, consisting of five members, a board of insurance, consisting of seven members, and one delegate from each subordinate lodge."

Their jurisdiction and authority is thus declared:

"Section 6. The Grand Lodge has exclusive jurisdiction over all subjects pertaining to the brotherhood, and its enactments and decisions upon all questions are the supreme law of the brotherhood. The Grand Lodge may hear and determine all matters of controversy which may be brought before it by appeal or otherwise, issue all charters, reprove and punish the misconduct of subordinate lodges, adopt laws and regulations of general application for the government of the brotherhood, and alter, amend, or repeal the same; control and regulate the unwritten work of the brotherhood; establish, print, and supply all charters, constitutions, official receipts, rituals, dispensations, withdrawals, transfer and traveling cards of the brotherhood, make such assessments for revenue as may be necessary to defray the expenses of the Grand Lodge, and do all things necessary to promote the welfare of the brotherhood."

It is within the general rules of the brotherhood that sections 9 to 20, inclusive, occur. In section 10 it is declared:

"In the event of a strike, the president of the Grand Lodge shall be the recognized leader, and in conjunction with the general secretary and treasurer, and after having received the approval of the board of trustees, shall have authority to appropriate from the protective fund of the brotherhood, such moneys for legal advice and incidental expenses as in their judgment may be required for a successful prosecution for the strike. The president and general grievance committee or board of adjustment have the authority to terminate a strike, but, in the event of a difference of opinion, and upon application of either party, it shall be the duty of the board of trustees immediately to meet with the president and general grievance committee or board of adjustment and decide the question, and the decision of the board of trustees shall be final and binding."

Section 14 provides for the creation of a protective fund in "which all members shall participate," which is required to be used as "hereinafter provided"; the assessment is required of beneficiary members, to be remitted to the general secretary and treasurer "for the protective fund" (section 15). Provision is contained in section 16 for the protective fund returns from subordinate lodges and penalties for nonpayment. Provision is made in section 17 for the levy by the president and secretary and treasurer, in conjunction with the board of trustees, of an additional or emergency fund. Section 18 provides for the payment of protective benefits under sworn statements showing the names, occupations, and length of service with the company "of all men under the jurisdiction of the lodge engaged in the strike." Section 19 provides when payrolls are payable, with the proviso that, "in the event of a general strike caused by a concerted or general wage movement, the president, general secretary and treasurer, in conjunction with the vice presidents in charge of such strike, and the board of trustees, may determine the suspension of the payment of any or all strike benefits under this section, if in their judgment such action is deemed necessary for the protection of the brotherhood's funds."

[7, 8] It is apparent that the lex fori of the parties was not within the state. Watkins Co. v. Hill (Ala. Sup.) 108 So. 244.[2] If a contract is "good where made, it is good everywhere." N. Y. L. Ins. Co. v. Scheuer, 198 Ala. 47, 73 So. 409; Galliher v. State M. L. Ins. Co., 150 Ala. 543, 43 So. 833, 124 Am. St. Rep. 83; So. Exp. Co. v. Gibbs, 155 Ala. 303, 46 So. 465, 18 L. R. A. (N. S.) 874, 130 Am. St. Rep. 24; So. Ry. Co. v. Harrison, 119 Ala. 539;[3] W. U. T. Co. v. Favish, 196 Ala. 4, 71 So. 183; Scheible v. Bacho, 41 Ala. 423; Swink's Adm'r

v. Dechard, 41 Ala. Ib. 602; Evans v. Kittrell, 33 Ala. 449; Thomas v. De Graffenreid, 17 Ala. 602; Goodman v. Munks, 8 Port. 84.

[9] It should be said of Grand I. B. L. E. v. Green, 210 Ala. 496, 98 So. 569, that it was held that in a suit by a member of an unincorporated brotherhood for damages for his unlawful expulsion against that association it was not necessary for the plaintiff to allege and prove that he had taken the judgment of the tribunal of last resort within the organization. To have held otherwise of a matter of legal right in the premises would be to allow one of the parties to be arbiter or judge of his own cause, which conclusion would be contrary to section 13 of the state Constitution and to the genius of our institutions. Idem agens et patiens esse non potest—one cannot at the same time be the person acting and the person acted upon—is a well-recognized legal maxim. Hughes' The Law Restated, 183; Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076; Burton v. United States, 202 U. S. 344, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392; Magruder v. Drury, 235 U. S. 107, 120, 35 S. Ct. 77, 59 L. Ed. 151. And from which truth and analogy our decisions have proceeded. Meeks v. Miller, 108 So. 864.[4] The concession is made in the Green Case that, if plaintiff had proceeded with the purpose of merely compelling his restoration to membership within the order, it would be necessary that he seek relief in the tribunal of final decision within the organization. State ex rel. McNeil v. Bibb St. Church, 84 Ala. 23, 4 So. 40; Medical Soc. v. Weatherly, 75 Ala. 248. There was error in sustaining demurrer to pleas 5, 8, as amended, and 9.

[10] After a due consideration of the authorities, the power through the provisions of the brotherhood law to make the decision of their own officials and tribunals conclusive in respect to the extraordinary protective fund and all its strike benefits under its law, we are of opinion are conclusive on the members, no fraud being charged. These institutions, operating for their members or a reasonable classification thereof for reasons of policy and that of its welfare, may adopt laws for their government, to be administered by themselves to its members, and require for the general benefit the surrender of no right that an individual may not waive. And he is bound by that authority and law only so long as he chooses to recognize that authority, Woodman v. Alford, 206 Ala. 18, 89 So. 528; Ex parte Mosaic Templars of Amer., 212 Ala. 471, 103 So. 65. Any other rule would impair the usefulness of such institutions, and render the duly constituted tribunals of such order practically useless. If the constitution and by-laws be considered under the general issue, the several requested affirmative in-Company as a switch engine foreman, and was so employed when, on March 5, 1921, a

---

[2] Ante, p. 507.

[3] 24 So. 562, 43 L. R. A. 385, 72 Am. St. Rep. 936.

[4] Post, p. 684.

structions for defendant should have been given.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

