PITTMAN, Judge.
An unincorporated association, the Brotherhood’s Relief & Compensation Fund (“the Fund”), appeals from a judgment of the Jefferson Circuit Court, Bessemer Division, awarding a railroad worker, Ryan V. Rafferty (“the employee”), benefits allegedly due him as a result of an adverse disciplinary action taken against him by the Burlington Northern Santa Fe Railroad Company (“the employer”). Because we conclude that the Fund did not act arbitrarily in determining that the employee’s conduct constituted a willful or intentional violation of one of the employer’s rules within the scope of a provision of the Fund’s internal constitution barring the award of benefits for such violations, we reverse the trial court’s judgment and remand the cause with instructions.
The record reveals that the Fund maintains a society for beneficial and protective purposes that is open, conditioned upon acceptance of an application and payment of dues, to transportation workers who are affiliated with railroad brotherhoods or unions. The Fund is governed by a constitution that provides that moneys paid into the Fund are for the benefit of its members, and that document further specifies that a member may make a claim for benefits, among other reasons, when that member is “held out of service,” that is, “relieved by [the member’s] employer from the performance of ... usual duties.” However, the Fund’s constitution also specifies that the term “held out of service” does not include employer discipline “because of any willful or intentional violation or infraction of any order or orders, rule or rules, regulation or regulations, expressed or implied, of [the member’s] employer” (emphasis added).
In 2005, the employer had in force a rule providing that while on duty or on the employer’s property, with the exception of railroad police officers, “employees must not have firearms or other deadly weapons.” The employer also had in force a rule prohibiting dishonest and immoral conduct. On October 18, 2005, after conducting an investigation and holding a hearing concerning the circumstances under which a loaded pistol was found inside *695 a case on one of the employer’s locomotives on October 7, 2005, the employer dismissed the employee from its employment on the stated basis that he had violated the employer’s firearm-possession and dishonesty rules.
The employee then presented a claim to the Fund for “held out of service” benefits, averring in his claim that he had, by accident, left a pistol in his bag on the employer’s locomotive. An official of the Fund, after studying the transcript of the disciplinary hearing, responded by letter to the employee’s claim and informed the employee that the claim could not be approved because of provisions of the Fund’s constitution barring benefit awards based upon acts constituting misrepresentation of facts to an employer or acts amounting to willful or intentional rule violations. Pursuant to pertinent review provisions of the Fund’s constitution, the employee appealed from that adverse decision to the Fund’s board of directors. In January 2006, the board, after reviewing the available information regarding the employee’s claim, upheld the official’s determination that the employee’s claim was not valid under the Fund’s constitution.
The Fund’s constitution specifies that a party aggrieved by a decision of its board of directors may “appeal to [c]ourt” and allege an abuse of discretion in making a decision if certain procedural deadlines are met; however, the Fund’s constitution also specifies that “no appeal shall lie” from a determination by the board that an offense is willful or intentional. It is undisputed that the employee initiated an action in the trial court in compliance with the procedural deadlines specified in the Fund’s constitution. In that action, the employee, alleging breach-of-contract claims, sought an award of benefits not only from the Fund, but also from a separate entity (Locomotive Engineers and Conductors Mutual Protective Association, Inc. (“LEMPA”)) as a result of his dismissal.
In the trial court, the Fund moved for a summary judgment; however, that motion was deemed untimely by the trial court and was not ruled upon.[1] A bench trial on the employee’s claims was then held. At the conclusion of the trial, both defendants orally moved for judgments in their favor; however, the trial court declined to rule on those motions and instead directed “all parties to submit proposed orders.” The trial court entered a judgment in favor of the employee and against both defendants, ruling that each defendant owed benefits in the amount of $20,160. The Fund appealed from that judgment,[2] asserting that the trial court’s judgment amounts to an erroneous interference with its internal operations and an impermissible substitution of the trial court’s interpretation of the phrase “willful or intentional violation” for the Fund’s own interpretation of that phrase.[3]
The claim asserted by the employee was simply that the Fund had breached a contract by failing to pay benefits that he claimed were due under the *696 Fund’s constitution. Under Alabama law,[4] the constitution of a voluntary association such as the Fund is indeed deemed to be in the nature of a binding contract between the association and its members. E.g., Mackey v. Moss, 278 Ala. 55, 59, 175 So.2d 749, 752 (1965). However, whatever free hand the judiciary may otherwise have in interpreting a contract between two natural persons, the courts are enjoined by precedent not to “interfere with the internal operations of a voluntary organization” and not to “substitute their own construction of rules, regulations, bylaws, constitutions, or other formal agreements for that of the organization where the organization’s interpretations are not contrary to the law or public policy.” Wilson v. Spruell, 403 So.2d 214, 217 (Ala. 1981). Thus, a civil action by a member of a voluntary association making allegations as to claimed errors or omissions occurring in the association’s business conduct, therefore, must fall upon deaf ears “except in cases such as fraud, arbitrary ruling or lack of jurisdiction.” McNulty v. Higginbotham, 252 Ala. 218, 221, 40 So.2d 414, 416 (1949). McNulty further notes that a voluntary association such as the Fund has plenary power to interpret and administer its own rules and regulations, that the decision of such an association is to be presumed correct, and that courts may not interpret and apply rules and regulations in a manner reserved to the governing body of the association. Id.
A notable example of the application of the principles we have discussed is Brotherhood, of R.R. Trainmen v. Barnhill, 214 Ala. 565, 108 So. 456 (1926), upon which the Fund relied in the trial court and again cited in its principal appellate brief. In Barnhill, a member of a voluntary brotherhood of railroad workers prevailed at trial on a claim that the brotherhood had breached a contract to remit “strike benefits” allegedly payable from a protective fund to the member, who had continued to remain on strike after the board of directors of the brotherhood had voted to terminate a strike. The rules of the brotherhood provided that its board of trustees had the authority, in the event of disagreement between the brotherhood’s president and its general grievance committee, to decide whether to terminate a strike, and that in that event the board’s decision would be both binding and final. The judgment in favor of the member was reversed on the basis that it contravened the rules of the brotherhood:
“[T]he power through the provisions of the brotherhood law to make the decision of their own officials and tribunals conclusive in respect to the extraordinary protective fund and all its strike benefits under its law ... [is] conclusive on the members, no fraud being charged. These institutions, operating for their members or a reasonable classification thereof for reasons of policy and that of its welfare, may adopt laws for their government, to be administered by themselves to its members, and require for the general benefit the surrender of no right that an individual may not waive. And [a member] is bound by that authority and law only so long as *697 [the member] chooses to recognize that authority. Any other rule would impair the usefulness of such institutions, and render the duly constituted tribunals of such order practically useless.”
214 Ala. at 572, 108 So. at 462 (citations omitted).
The trial court, in its judgment, opined that the Fund owed a duty to the employee not to be “arbitrary or capricious” in deciding whether the employee’s claim was valid and proceeded to conclude, based upon testimony of the Fund’s corporate representative to the effect that “weapons at work are not payable,” that the Fund’s decision was arbitrary because, that court stated, the employee’s intent was not actually considered. We cannot conclude that the record supports the trial court’s ultimate conclusion that the Fund acted arbitrarily.
At the time the Fund initially denied the employee’s claim, it had before it the transcript of the employer’s investigative hearing concerning the employee’s connection with the presence of the firearm on the locomotive. At that hearing, at which a union representative appeared on the employee’s behalf, the employer’s Birmingham terminal manager (who was also the employee’s supervisor) was questioned concerning the employee’s intention with respect to bringing a firearm on the employer’s property; the terminal manager testified, in two responses during that line of questioning, that the employee had originally mentioned that he had brought the pistol “to show somebody” and that the employee had surmised that the pistol had fallen out of the bag used to carry the pistol. Although another witness at the hearing, a special agent with the employer’s “resource protection solutions” unit, testified that the employee had stated that he had “forgotten” the presence of the pistol in his bag when he reported to work, that transcript indicates that the agent spoke with the employee only after the employee had spoken with the terminal manager.
When questioned at the hearing about the terminal manager’s testimony that the employee had stated that he had brought the pistol to work to display to coworkers, the employee testified that he had made that statement “in panic” after having been awakened from two hours of sleep by a coworker who had telephoned to report that the pistol had been found. Further, although the employee maintained that he had gone “target shooting” with a friend before his work shift so as to explain the presence of the pistol in his bag, the employee did not present any testimony from the pertinent friend to corroborate the employee’s account. Finally, the reference in the employer’s dismissal letter to the rule regarding misrepresentations indicates that the employer deemed one or more of the statements made by the employee regarding his intentions to have been untruthful.
Pursuant to the Fund’s constitution, the Fund’s review of an employee’s claim for benefits based upon allegedly having been “held out of service” includes not only any transcript of an employer’s investigation, but also the claim notice itself and “all matters submitted by the member for consideration.” However, the employee submitted no such additional material to the Fund. Thus, the record on which the Fund’s decision to deny benefits was made contained evidence indicating that the employee, contrary to his claims of inadvertence, had actually planned to bring a firearm onto the employer’s property in order to display it.
*698 Even if it is true, as the employee suggests and as the trial court determined in its judgment, that deposition testimony of the Fund’s president proves that the Fund has a pattern and practice of not granting any “held out of service” claims involving possession of firearms at work,[5] that fact alone would not support a conclusion that the Fund’s decision to deny the employee’s claim in this case is arbitrary. As was more recently noted in the context of attorney discipline, “ ‘[wjhere there is room for two opinions, [an] action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.’ ” Alabama State Bar v. Hallett, 26 So.3d 1127, 1140 (Ala.2009) (quoting Heinmiller v. Department of Health, 127 Wash.2d 595, 609, 903 P.2d 433, 440 (1995)). The facts of the employee’s claim as presented to the board would, at least, leave enough room for reasonable people to form' conflicting opinions regarding the employee’s intent. Further, as we have noted, only the board of directors’ opinion regarding the employee’s intent is material because the Fund’s constitution renders final the board’s discretionary decision regarding whether an offense made the basis of an employment action giving rise to a “held out of service” benefits claim is willful or intentional.[6]
For the reasons stated herein, we conclude that the trial court erred in substituting its judgment for that of the Fund’s board of directors with respect to the pay-ability of the employee’s benefits claim in contravention of Alabama precedents mandating deference to the board’s decision. That court’s judgment in favor of the employee on his breach-of-contract claim against the Fund is, therefore, necessarily erroneous. We reverse the judgment and remand the cause for the Jefferson Circuit Court to enter a judgment in favor of the Fund on the employee’s claim.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. We note that under Rule 56(b), Ala. R. Civ. P., a motion for a summary judgment may be made by a defendant "at any time”; although Rule 16(b)(2), Ala. R. Civ. P., authorizes a trial court to limit the time in a particular case for the filing of motions, no such scheduling order appears in the record on appeal.

. LEMPA satisfied the judgment as to its liability and has not appealed.

.The Fund has abandoned on appeal any reliance upon the provision in its constitution barring benefits when a claim is based, in whole or in part, upon misrepresentation of facts to an employer; thus, we will not address that provision.

. Although the Fund's constitution expressly states that any alleged abuse of discretion on the part of the Fund’s board of directors is to be "adjudged in accordance with the statutes and decision of the Commonwealth of Pennsylvania” and that the mutual rights of the Fund and its members are to be determined under Pennsylvania law, neither the Fund nor the employee asserted, pursuant to Rule 44.1, Ala. R. Civ. P., the potential applicability of Pennsylvania law to their dispute; thus, like the trial court did, we will apply Alabama law. Brad’s Indus., Inc. v. Coast Bank, 429 So.2d 1001, 1003 (Ala. 1983).

. The trial court determined that the Fund had simply concluded that benefits were not payable for the sole reason that the incident had involved a weapon. The record as a whole, however, does not support that determination; the record instead reflects that, in denying benefits to the employee, the Fund relied on its belief that the employee’s action in carrying the weapon onto work premises was willful. That the Fund may also have had other reasons for denying benefits to the employee (some of which, the Fund believed, were sufficient in and of themselves to justify its decision) does not permit the conclusion that the Fund did not also deem its decision to deny the employee’s claim to be proper in light of the submissions to the Fund tending to show that the employee’s action had been willful.

. Our conclusion obviates consideration of other reasons cited by the Fund's corporate manager in his deposition testimony as arguably falling within the two provisions of the Fund’s constitution cited by the Fund as authority for denial of the employee’s claim. But see Central of Georgia R.R. v. Rush, 286 Ala. 333, 339, 239 So.2d 763, 768 (1970) (Harwood, J., dissenting) ("The employment of the plaintiff did not require his exposure to the risk of carrying a pistol in his shirt pocket, and the plaintiff’s personal act in carrying the pistol was external to the course of his employment.”).