# Hardie-Tynes Mfg. Co. *v.* Cruise, *et al.*

*Bill to Enjoin Interfering with Employees, and Against Strike.*

(Decided November 7, 1914.    66 South. 657.)

1. *Injunction; Subjects; Conduct of Business.*—The right to conduct one's business without the wrongful or injurious interference of others, is a valuable property right which will be protected, if necessary, by injunctive process.

2. *Same; Labor Dispute; Labor Contract; Peaceful Persuasion.*—While injunction will not lie to prevent members of a labor union from inducing others not to enter the services of a former employer

[Hardie-Tynes Mfg. Co. v. Cruse, et al.]

by peaceful persuasion, injunction will be granted to prevent interference with existing labor contracts by inducing servants to violate their agreement and leave their employment.

3. *Same; Criminal Acts.*—While equity will not entertain a bill on the ground alone that the respondent's acts constitute a crime, yet the fact that such an act is criminal, does not divest equity of jurisdiction to prevent by injunction such act if it also constitutes a violation of property rights and the party aggrieved has no other adequate remedy to prevent an irreparable injury which would result from the failure or inability of a court of law to protect the same.

4. *Same; Action; Pleading; Strikes.*—Where members of a labor union conspired to injure complainant's business during a strike, the character, animus and aim of such conspiracy might be as well illustrated by its manifestation against other employers in the same district at about the same time as by those directed against complainant alone, and hence, it was proper to allege acts committed against other employers.

5. *Conspiracy; Trade Unions; Rights of Employees.*—Employees may rightfully organize themselves into associations for mutual protection and betterment, and having so organized, may, by confederated action, withdraw from or decline to enter the service of a particular employer, but in such self-protection they may not employ threats, intimidation or violence against or on employers or their employees, or on strangers to induce them to leave, or not to enter the service of a particular employer.

6. *Same; Trade Unions; Picketing.*—Sections 6394, 6395 and 6856, Code 1907, prohibit picketing by members of a labor union, and even peaceable persuasion of persons not to become employees of one transacting a lawful business, or to induce employees to quit the service of such person, where the intention and effect of such act is to prevent the operation of a lawful business or enterprise, and to interfere with the operation thereof.

7. *Action; Grounds.*—Every criminal act which injures the person or property of another is also a civil tort redressible by the court, and preventable in proper cases by injunction.

8. *Constitutional Law; Inalienable Rights.*—The provision of section 6395, Code 1907, is not in violation of section 1, Constitution 1901, as the term "liberty" as there used means that liberty which is guaranteed by law, and the social compact.

9. *Equity; Bill; Demurrers.*—Want of equity and multifariousness as grounds for demurrers to a bill attacked the bill as a whole, and are not sustainable if any or a part of the bill entitles complainant to equitable relief.

10. *Same; Multifariousness.*—Where the bill was filed to protect complainant in its property rights against the unlawful acts of respondent during a strike which were threatened in the execution of a conspiracy between respondent and others, the bill being merely to prevent criminal acts of violence threatened against complainant or its employees, actual or prospective, was not rendered multifarious because it charged the commission of sundry, injurious and unlawful acts by defendant or their co-conspirators for the single purpose of interfering with complainant in the lawful conduct of its business, and tending to its injury in that behalf.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by the Hardie-Tynes Manufacturing Company to enjoin W. D. Cruse and others from interfering with their employees and against a strike. Decree for respondents and complainant appeals. Reversed and rendered.

The bill of complaint seeks relief against certain of complainant's former employees, who are members of the Molders' Union, and who in co-operation with the union have engaged in a general strike against their employers, including complainant company. It charges that respondents and other fellow unionists have united upon a general plan of action to coerce their former employers to agree to their terms, and to prevent them from employing other members of said union instead of those who had of their volition left their former service. One of the prominent features of this coercion and intimidation was a system of picketing and controlling an organized espionage upon the works and upon those going to and fro from them which was at once begun, and has been systematically continued, and which it is the purpose of the union, as will hereafter more fully appear, to continue indefinitely, to which picketing and partolling, especially as respects the works of your orator, further reference will be made hereafter. The general and essential equity of the bill is exhibited by the allegation of paragraph 4:

Orator further alleges that W. D. Cruse (and the other respondents) have been and still are active in picketing and watching its works, together with other members of said lodge, whose names are unknown to orator, some of whom were employees of other machine shops and foundries in the district, and who have

unlawfully confederated and conspired together, and are still doing so to prevent orator from successfully carrying on its said business, and to coerce it to accede to their demands against its will, so as to prevent orator from obtaining and retaining other employees who are willing and competent to work for it on mutually satisfactory terms as molders, and thereby either to break up the business of orator, or to compel it to conduct its business under the dictation of said union, and on their terms, and to employ members thereof only, thereby interfering with orator's constitutional right of contract, and that of other artisans who do not belong to said order of unions; in pursuance of which conspiracy, and to carry out their common design, members of said union, some of them being the persons hereinbefore named, and others unknown to orator, have attempted to accomplish their unlawful purpose by menaces, intimidations, and opprobrious names addressed to orator's workmen, by gathering in crowds about orator's place of business, in the public streets contiguous thereto, and by following its workmen on the street, and applying opprobrious epithets and by acts of violence to the persons of some of them. As a result of such unlawful acts, orator has been deprived of the services of men who were ready and willing to work, and has been injured and impeded in its business; it being, as orator believes and charges, the purpose of said parties and members of said union to continue their unlawful practice if not restained by the court. Orator alleges that, in order to protect the molders who are working for him from insults and violence by said person so conspiring, they have had to employ deputy sheriffs at considerable expense in order to attend to its employees in going to and from their place of business to their

boarding houses morning and evening. In pursuance of the same intent and design, said parties above named, or several of them, have gone in front of and into the boarding places of its employees without invitations, and against the will of its employees as well as of the boarding house keepers, and applied to such employees various insults and opprobrious insults, reference to which will be hereafter made.

And further by the allegations of paragraph 5, as follows:

Orator further alleges, as showing the course of conduct of said strikers and the nature and character of the picketing and espionage to which orator's works and workmen have been subjected since, to wit, July 15, 1912, the said strikers have established a picket who come to your orator's place of business from time to time, although not every day. These men usually come in groups of five or six, arriving there as a rule a little while before the time to close work, and remaining there until they have had an opportunity to see and to worry and annoy their workmen. On days when these men do not come to orator's shop, the same men or others go to the shops of other companies in this district as against whom a similar strike is pending, and resort to the same character of abuse and intimidation. Said pickets gather and assemble at the intersections of the streets lying contiguous to orator's property and in front of the office of orator and walk around the works and along the street in front of orator's office. Orator alleges that one of the objects of said picketing is to ascertain what is going on in orator's works and who are working for orator as molders, so that when any of its molders exercise the privilege of going into the business part of the city or become separated from the deputy sheriff, who attends

them morning and evening on their trip to and from their boarding houses, members of said union and their sympathizers may identify them and thus be able to intimidate or coerce them, as will be hereafter made more fully to appear; and another object orator alleges is to annoy its workmen by promises, threats, persuasion, and insulting language, and induce them to quit orator's service, and thus injure orator, and thereby compel orator to re-employ said strikers, the members of said union, upon their terms, and to comply with their demands which they made prior to quitting the service of orator, and orator will hereinafter set forth facts and circumstances that have occurred evidencing these purposes and illustrating the nature and objects of said picketing.

Succeeding paragraphs set out in detail numerous instances of picketing, patrolling, and congregating in crowds near the works of employer companies, including complainant, on the part of respondents and their confederates, accompanied by abuse, threats, intimidation, and actual violence against the employees of complainant and those going to its works to receive employment. Paragraph 12 also charges injury to complainant as follows:

Orator further alleges that, as a result of the wrongful conspiracy and the wrongful acts hereinbefore set forth, its business has been seriously interfered with, that it has been put to a large expenses which would have been unnecessary except for such wrongful acts, and, as a result, the good will of its business, which is of large value, will be seriously impaired, if not ruined, if such wrongful conduct is not restrained; and further its damage will be irreparable because, as it alleges, the law furnishes no adequate standard to measure the loss of business and profits; and orator

alleges, furthermore, that said parties are unable from insolvency and want of property, as orator is informed and believes, and upon such information and belief charges, to respond in damages to orator.

The prayer of the bill is as follows: That a preliminary injunction be issued restraining and enjoining said defendant, and each of them and all other members of said union, and all persons whomsoever combining and conspiring with them, or acting under or in concert with said defendant, from in any manner unlawfully hindering or interfering with the business of your orator, or from inducing or compelling or attempting to compel by threats, intimidation, force, or violence any of orator's employees, to leave its service, or from preventing or attempting to prevent any person or persons by threats, intimidation, force, or violence from entering the service of orator as molder, or in any other capacity, or from directing, aiding, or abetting any other person or persons to commit either of said acts; and further from congregating or loitering at or near the premises of orator for the purpose of intimidating its employees, or inducing them to leave the service of orator, and from collecting in or about the approaches of the property of orator or from picketing, patrolling, or guarding its works, or the streets, avenes, and gates of orator, for the purpose of intimidating, threatening, coercing, or enticing any of its employees, or from molesting its employees on the streets or elsewhere, or from calling them opprobrious names, or from interfering with the free access of orator's employees to said works, and their free return to their boarding houses or homes, or from unlawfully interfering in any manner with the said employees when they are on the street or away from their home, or from picketing the property of

orator in the manner and for the purposes alleged in
the bill, and from going to or in front of the boarding
houses, or other place of residence of its employees,
and there insulting, abusing, intimidating, threaten-
ing, or enticing its employees in the manner and for
the purposes herein set forth. It is prayed that on
final hearing the injunction may be made perpetual.
The bill also prays for such other and further relief
as complainants may be entitled to.

The chancellor denied the preliminary injunction,
which was, however, issued by a justice of the Supreme
Court upon application as prayed in the bill. No ob-
jection has been taken to the writ, and it is not in-
volved in this appeal. The respondents demurred on
the ground that the bill was without equity and was
multifarious. They demurred further to each separ-
ate paragraph of the bill on the various grounds set
out in the demurrer. On submission "for decree upon
the separate demurrers by respondents to the bill of
complaint," it was decreed by the chancellor that said
demurrers be and they are separately and severally
sustained. In his opinion, the chancellor states that
the bill contains equity, and does not show a misjoin-
der, and further that he is sustaining the grounds of
demurrer assigned to paragraphs 7 to 12 of the bill.
From the decree sustaining this demurrer, complain-
ant appeals.

CABANISS & BOWIE, for appellant.

GIBSON & DAVIS, for appellee.

SOMERVILLE, J.—The English and American
courts have, we believe, without exception, held that
the right to conduct one's business, without the wrong-

ful and injurious interference of others, is a valuable property right which will be protected, if necessary, by the injunctive processes of equity.—*Gray v. Build. Trades Council*, 91 Minn. 171, 97 N. W. 663, 63 L. R. A. 753, 103 Am. St. Rep. 447, 485, 1 Ann. Cas. 172; *Vegelahn v. Guntner*, 167 Mass. 92, 44 N. E. 1077, 35 L. R. A. 722, 57 Am. St. Rep. 443; *Beck v. R. T. P. Union*, 118 Mich. 497, 77 N. W. 13, 42 L. R. A. 407, 74 Am. St. Rep. 421, 429.

They seem to be unanimous, also, in holding that employees may rightfully organize themselves into associations for mutual protection and betterment; and that, having thus organized, they may by confederated action withdraw from, or decline to enter, the service of any particular employer. And it may be further said that there is practically no judicial dissent from the proposition that in the accomplishment of their purposes of self-protection and self-betterment employees or nonemployees have no right to use threats, intimidation, or violence against or upon employers, or upon their employees or strangers to induce them to leave or not enter the service of the former.—24 Cyc. 830, 831.

With respect to the "peaceful persuasion" of others not to enter an employer's service, it may, perhaps, be said that such a right is generally recognized by the courts, and injunctive relief against it is denied, though it is to be noted that interference with existing contracts of service by inducing those so contracting to violate their agreements is such a wrong as may be enjoined in equity.—24 Cyc. 838, and cases cited.

In regard to the practice of "picketing," as that term is commonly understood, the courts are not in harmony. The consensus of judicial opinion is admirably stated in the following excerpt from the case note to

*Jensen v. C. & W. Union,* 39 Wash. 531, 81 Pac. 1069, 4 L. R. A. (N. S.) 302: "The lawfulness or unlawfulness of 'picketing' in the United States—as subsequently shown, it is otherwise in England in consequence of statutory provisions—must be determined in view of the fundamental principle upon which all the courts are agreed, that the boundary between lawful and unlawful conduct in the effort to induce persons, not under contract, to leave another's employment, is the line between peaceable persuasion and intimidation. As a practical matter, however, it is not always easy to determine exactly when peaceable persuasion ceases and intimidation commences, or so to frame an injunction that it will, in its practical operation, prevent intimidation without infringing the right of peaceable persuasion. Open threats, much less actual violence, are not an indispensable accompaniment or condition of intimidation. That which in appearance and outward form is but peaceable persuasion may, by virtue of the intent which lies behind it or the circumstances which surround it, carry a menace the practical effect of which is intimidation. Indeed, it is quite conceivable that, under the circumstances generally surrounding a strike or other labor difficulty, that which was in good faith intended as peaceable persuasion, and designed merely to influence the voluntary action of employees or persons seeking employment, may by reason of the timidity or unprotected condition of persons upon whom it is exerted, operate practically as intimidation or coercion. Picketing a place of business where a strike is in progress, though in intent as well as in outward appearance maintained for the lawful purpose of persuading the classes of persons mentioned, has almost inevitably some tendency to intimidate individuals belonging to those classes. This ten-

dency has induced a few courts, though they are in decided minority, to condemn picketing per se and under all circumstances as unlawful, or at least to enjoin picketing without qualification or exception by reference to intimidation, though even in cases of this kind the showing upon which injunctions have been granted has included facts indicating that the picketing had been accompanied by threats or other conduct amounting to actual intimidation."

It is further said by the same writer (4 L. R. A. [N. S.] 304) : "Most of the cases that have passed upon the lawfulness of 'picketing,' and whether the same should be enjoined, have expressly or in effect conceded that picketing is not per se unlawful, and that, if strictly and in good faith confined to the purpose of gaining information as to what persons remain in the employment, or what persons are seeking employment, or of peaceably persuading such persons, if not under contract, to leave the employment, or not to enter the employment, it will not be enjoined."

It may be noted here that "pickets," a word more or less appropriately borrowed from the nomenclature of warfare, is defined by the dictionaries as: "A body of men belonging to a trades union, sent to watch and annoy men working in a shop not belonging to the union, or against which a strike is in progress."—Century Dictionary; Webster's Dictionary.

It is obvious that upon the established principles of the common law, and without the aid of statutory provision, the bill of complaint in this case contains equity; and, indeed, this does not seem to be seriously controverted.

It is, however, urged on behalf of the respondents that the bill is demurrable in so far as it seeks to prevent peaceable picketing and the peaceable persuasion

of complainant's workmen to leave their employment. Conceding, without deciding, that the demurrers raise this point, and that the weight of authority in other states sustains it, the statutes of this state do not permit us to so hold. We notice briefly these provisions:

"Any person who entices, decoys, or persuades any apprentice or servant to leave the service or employment of his master" is guilty of a misdemeanor.—Section 6849, Code of 1907.

This section was construed in *Abingdon Mills v. Grogan,* 167 Ala. 146, 52 South. 596, as being applicable not only to menial servants, but also the employees of a mill; and in *Tarpley v. State,* 79 Ala. 271, it was held that a similar statute was not obnoxious to the Constitution of the State.,

"Any two or more persons who conspire together for the purpose of preventing any person, persons, firm, or corporation from carrying on any lawful business within the State of Alabama, or for the purpose of interfering with the same, shall be guilty of a misdemeanor."—Section 6394, Code 1907.

"Any person or persons who go near to or loiter about the premises or place of business of any person, firm, or corporation engaged in a lawful business, for the purpose of influencing * * * others not to trade with, buy from, sell to, or have business dealings with such person, firm, or corporation, or to picket the works or place of business of such other person, firm, or corporation for the purpose of interfering with or injuring any lawful business or enterprise, shall be guilty of a misdemeanor."—Section 6395, Code 1907.

"Any person who, by force or threats of violence to person or property, prevents, or seeks to prevent, another from doing work or furnishing materials, for

or to any person engaged in any lawful business, or who disturbs, interferes with, or prevents, or in any manner· attempts to prevent the peaceable exercise of any lawful industry,. business, or calling by any other person, must, on conviction, be fined, etc."—Section 6856, Code 1907.

The meaning and purpose of these provisions are, we think, too plain for serious discussion. Sections 6394 and 6856 are broad enough to include even the peaceful persuasion of would-be employees not to serve an employer, if its intention and effect is to prevent the operation of a lawful business. And while the courts do not undertake to enjoin the conspiracy itself, the execution of the conspiracy would be a criminal tort against the employer's property rights which may be prevented by injunction. Section 6395 is more specific in its inhibition of such forms of "peaceful interference," and expressly forbids picketing when it is done "for· the purpose of interfering with or injuring any lawful business or enterprise." Perhaps our Legislature has taken the view, adopted by some of the courts, that in actual practice there is and can be no such thing as peaceful picketing or peaceful persuasion. Certainly this is the effect of our statutes.

It is hardly necessary to say that every criminal act which injures the person or property of another is also a civil tort, redressible by the courts, and preventable in proper cases by injunctive process. The allegations of the bill, the single purpose of which is to protect the business and property rights of the complainant against injury by the confederated and unlawful acts of the respondents, brings its aims and equities within the principles and provisions of the common law and statutes above adverted to.

[Hardie-Tynes Mfg. Co. v. Cruse, et al.]

It is suggested by counsel for respondents that our construction of section 6395, as being an inhibition of picketing even where threats or violence are not used, renders it unconstitutional. No intimation is offered as to what provision of the Constitution is thereby offended, and we can think of none. Certain it is that a right to actively and directly interfere with and prevent the operation of the lawful business of another is not included among the inalienable rights of "life, liberty, and the pursuit of happiness." The "liberty" guaranteed by the Constitution (article 1, § 1) is liberty regulated by law and the social compact; and in order that all men may enjoy liberty it is but the tritest truism to say that every man must renounce unbridled license. So, wherever the natural rights of citizens would, if exercised without restraint, deprive other citizens of rights which are also and equally natural, such assumed rights must yield to the regulations of municipal law. If one man asserts the constitutional right of preventing another from the pursuit of a lawful business, what is to become of the undoubted constitutional right of that other person to pursue his business unmolested? It is clear that this notion of liberty utterly ignores "the other fellow," and denies to him the very freedom it claims for itself.

We gather from the opinion of the chancellor that he intended to sustain demurrers only to certain paragraphs of the bill—7 to 12, inclusive. The decree, however, in express terms sustains the demurrers to "the bill of complaint," which at least includes the grounds of want of equity and multifariousness— grounds which from their very nature can relate only to the bill as a whole. The chancellor's opinion may explain his reasons for the decree, but it cannot qual-

ify the decree itself. As the bill contains equity, and is not multifariousness, the decree is manifestly erroneous in this respect. But, if his action were referable only to the demurrers assigned to the separate paragraphs of the bill as noted, it would be equally erroneous, because based upon a misconception of the bill, and a misapplication of the rule announced in *M. & W. R. R. Co. v. Walton,* 13 Ala. 208.

The purpose of the bill, as already noted, is single, viz., to protect the property rights of complainant against the unlawful acts of respondents, which are threatened to be done in the execution of a conspiracy betwen the respondents and others. As evidence of the general as well as the specific intention of the conspirators, the bill charges the commission of sundry injurious and unlawful acts by respondents or their co-conspirators—all done for the purpose of interfering with complainant in the lawful conduct of its business, and all tending to its injury in that behalf.

If the bill were filed merely for the purpose of preventing criminal acts of violence threatened against complainant or its employes, actual or prospective, it would be within the rule declared in *M. & W. R. R. Co. v. Walton, supra,* on the authority of which alone the chancellor bases his action. In that case it was said: "The courts of law have complete jurisdiction to punish the commission of crimes, and can interpose to prevent their commisison by imprisoning the offender, or binding him to keep the peace. But equity has no jurisdiction over such matters, at least a court of equity cannot entertain a bill *on this ground alone."* (Italics ours.).

This qualification has been several times recognized and applied by this court: "The mere fact that an act

is criminal does not divest the jurisdiction of equity to prevent it by injunction, if it be also a violation of property rights, and the party aggrieved has no other adequate remedy for the prevention of the irreparable injury which will result from the failure or inability of a court of law to redress such rights."—*Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 115, 126, 4 South. 106, 112 (5 Am. St. Rep. 342).

See, also, *Brown v. Birmingham*, 140 Ala. 590, 601, 37 South. 173; *In re Debs*, 158 U. S. 564, 593, 15 Sup. Ct. 900, 39 L. Ed. 1092.

That the jurisdiction arises to prevent such acts of trespass as are here threatened, by reason of their disturbance of property rights, is thoroughly well settled.—*Vegelahn v. Gunter*, 167 Mass. 92, 44 N. E. 1077, 35 L. R. A. 722, 57 Am. St. Rep. 443; *Arthur v. Oakes*, 63 Fed. 310, 11 C. C. A. 209, 25 L. R. A. 414; 24 Cyc. 836b.

A paragraph or part of a bill cannot be separately subject to demurrer unless it attempts to exhibit a separate and distinct basis or aspect for equitable relief.

"A demurrer to part of a bill, on the other hand, is proper when the bill presents more than one claim or basis for the suit, though the bill be not made multifarious thereby, and one of them is not a good claim, or does not constitute a cumulative ground for relief; so that the statement of it merely cumbers the cause and should be stricken out."—Sims' Chan. Prac. § 429, and cases cited.

The bill in this case is clearly not of that character, but must be treated as a unit. Its essential equity in its single aspect is stated in paragraphs 3 and 4, supplemented by paragraphs 11, 12, and 13. Paragraph 2 is by way of inducement merely. And paragraphs 5 to 10, inclusive, set up general causes and specific

[Roberson, et al. v. Oliver, et al.]

instances of threats and unlawful conduct in support and illustration of complainant's charges of conspiracy and intention to injure on the part of respondents and their confederates.

The character, animus, and aims of such a conspiracy may be as well illustrated by its manifestations against other employers in the same district at about the same time, as by those directed against complainant alone; and the bill charges that all are part of one common plan and purpose.

We are of the opinion that none of the demurrers are well taken. The decree of the chancery court will be reversed, and a decree will be here rendered overruling the demurrers to the bill of complaint and to its several paragraphs separately and severally.

Reversed and rendered.

ANDERSON, C. J., and MAYFIELD and DE GRAFFENRIED, JJ., concur.