175 So.2d 749

**M. C. MACKEY**

v.

**Kenneth MOSS.**

**3 Div. 141.**

Supreme Court of Alabama.

May 27, 1965.

John P. Kohn and Hugh Maddox, Montgomery, for appellant.

Goodwyn & Smith, Montgomery, for appellee.

HARWOOD, Justice.

On 11 March 1964, Kenneth Moss filed a bill of complaint against M. C. Mackey, individually and as secretary of Local 479, American Federation of Musicians. The cause was heard on 23 March 1964, and on that day the bill was amended by adding as a party respondent the American Federation of Musicians. At the direction of the court, service upon the American Federation of Musicians was effectuated by the register serving a copy of the amended bill upon M. C. Mackey, the local secretary of the American Federation of Musicians.

The amended bill alleged that the American Federation of Musicians had arbitrarily placed the appellee's name on the "National Defaulter's List," of the American Federation of Musicians, and that as a result of such action the Federation was attempting to interfere with the contractual relationship existing between the appellee and certain musicians employed by him, and that such action would result in irreparable injury to the complainant in that musicians employed by the complainant would be compelled to cease performing under their contracts of employment with the complainant.

On the day that the amendment to the bill was filed, a hearing was had and after argument the court took the matter under consideration and on 30 March 1964, upon condition of execution of an injunction bond in the amount of $5,000, the court issued a temporary writ of injunction requiring the American Federation of Musicians and M. C. Mackey, its local secretary, to remove the name of Kenneth Moss from the National Defaulter's List, and prohibiting them from taking any further

action relative to placing the name of Kenneth Moss on such defaulter's list, and further prohibiting any interference with the contractual relationship existing between Kenneth Moss and Buddy Pello, a musician employed by Moss.

Thereafter the American Federation of Musicians filed a "petition for an advice or instructions" as to whether or not there was a hearing as to the American Federation of Musicians within the meaning of the law of Alabama as respects temporary injunctions, stating that they did not know whether to appeal from said order or to file a motion to dissolve the said temporary injunction.

Pursuant to this petition the court issued an order stating that it was the court's determination that the issuance of the temporary injunction against the American Federation of Musicians was made ex parte and was an ex parte injunction, and that the temporary injunction granted against M. C. Mackey, individually and as secretary of Local 479, American Federation of Musicians, was granted after a hearing.

Pursuant to this construction of its injunctive order, the American Federation of Musicians filed a motion to dissolve the temporary writ of injunction which after hearing was denied.

Separate appeals were then taken by the respondents, M. C. Mackey appealing from the order granting the injunction, and the American Federation of Musicians appealing from the order denying its motion to dissolve the injunction.

This review concerns the separate appeal of Mackey, as Secretary, etc.

The evidence introduced below tended to show that on February 1964, the appellee, Kenneth Moss, entered into a contract with Buddy Pello whereby Pello, a musician, was to perform nightly at the Diplomat Inn in Montgomery, Alabama, said Diplomat Inn being operated by Moss. The contract was to extend through 19 December 1964. The contract was on a form of the American Federation of Musi-

cians, and among other things contained the following provisions:

"Any employees who are parties to or affected by this contract are free to cease service hereunder by reason of any strike, ban, unfair list order, or requirement of the Federation, and shall be free to accept and engage in other employment of the same or similar character or otherwise, for other employers or persons without any restraint, hinderance, penalty, obligation or liability whatever, any other provisions of this contract to the contrary notwithstanding. * * *

"The employer represents that there does not exist against him, in favor of any member of the Federation, any claim of any kind arising out of musical services rendered for any such employer. No employee will be required tract or to render any services for to perform any provisions of this consaid employer as long as any such claim is unsatisfied or unpaid, in whole or in part. * * *

"To the extent permitted by applicable law, there are incorporated into and made a part of this agreement, as though fully set forth herein, all of the bylaws, rules and regulations of the Federation and of any Local of the Federation in whose jurisdiction services are to be performed hereunder (insofar as they do not conflict with those of the Federation), and the employer acknowledges his responsibility to be fully acquainted now and for the duration of this contract, with the contents thereof."

The uncontradicted evidence shows that at the time the appellee Moss executed the contract with Pello there were two claims against him filed with the American Federation of Musicians; for alleged claims growing out of breach of contract with other performers or entertainers. One such claim was by Charles Drake, a musician, and the other was by a group known

as the "Star Belles." By letter dated 13 January 1963, Moss was notified by the American Federation of Musicians of the claim filed by Charles Drake against him and the Diplomat Inn for alleged salary due, and was requested to reply to the same within 14 days and was informed that failure on his part to reply within that time might result in the case going against him and the Diplomat Inn by default. This claim was allowed by the Federation.

Later, with the assistance of Mackey the claim of Charles Drake was reopened by the American Federation of Musicians, and the amount found to be due was reduced.

As to the claim filed by the Star Belles, it appears that their claim was filed by letter dated 21 November 1963, with the American Federation of Musicians, and Moss was notified of its filing and was requested to answer within 14 days. This he did not do, though at a later date he did furnish the American Federation of Musicians with information to the effect that the Diplomat Inn was undergoing remodeling changes and it was impossible for him to use the services of the Star Belles in the Diplomat lounge on the date agreed to with their agent, and that upon his signing the contract and placing the same in the mails he had on that same date notified the agent of the Star Belles by telegram that it was necessary for him to cancel the contract which he had deposited in the mails a few hours earlier addressed to the agent in Kansas City.

Upon consideration of the claims filed by Drake and by the Star Belles, the executive board of the American Federation of Musicians allowed the claim of the Star Belles, and the claim of Drake, though Drake's claim was later reduced in amount as above stated.

Moss was notified by the Federation of the action of the board in each case, and was informed that failure on his part to pay the claims would result in his name as well as that of the Diplomat Inn "being placed on the list of those in default of payment to members of the American Federation of Musicians and, in addition thereto, notification thereof will be published in our official journal 'The International Musician.'"

Thereafter M. C. Mackey, as secretary of Local 479, was notified by the Federation that Moss and the Diplomat Inn had been placed on the national defaulter's list of the Federation for failure to pay the claims.

M. C. Mackey testified that his duties included carrying out directives of the American Federation of Musicians. Upon receiving the notice from the Federation as to Moss and the Diplomat Inn being placed on the defaulter's list, he wrote Buddy Pello advising him of this fact. He had nothing whatever to do with the placing of Moss and the Diplomat Inn on the defaulter's list, and has not talked with Pello since he wrote him the letter. It was Mackey's opinion that in the face of the Federation having placed Moss and the Diplomat Inn on the defaulter's list that if Pello continued to work at the Diplomat Inn then the union would take some action against Pello. This might be in the form of a fine, or expulsion from the Federation. If Pello saw fit to continue to work at the Diplomat Inn, he was at liberty to do so and could drop out of the Federation at any time he wanted to.

Every witness who testified, including those for the complainant, stated that Mackey had never at any time threatened, coerced, or attempted to coerce by any means any employees at the Diplomat, and his only action in the Pello matter was to write Pello notifying him of the Federation's action.

While many points are argued by the appellant as constituting error, it would appear that the overriding question is whether a temporary injunction should have been issued enjoining Mackey as secretary of Local 479 of the American Federation of Musicians from notifying members of the Federation that an employer, for whom the member was then performing, had been placed on the national defaulter's list of the Federation.

Voluntary associations have the right to make their own regulations as to the admission or expulsion of members, and one who becomes a member assents, by his membership, to the constitution and rules and procedure adopted by such association. The constitution, rules and bylaws constitute a "contract" between the association and its members and the rights and duties of the members as between themselves and the association are measured by the terms of such constitution and bylaws.

In Shaup v. Grand International Brotherhood, etc., 223 Ala. 202, 135 So. 327, this court quoted with approval the following language from State ex rel. Smith v. Kanawha County Court, 78 W.Va. 168, 88 S.E. 662, 20 A.L.R. 1030:

"'The right of a voluntary association to interpret and administer its own rules and regulations is as sacred as is the right to make them, and there is no presumption against just and correct action or conduct on the part of its supervising or appellate authorities and tribunals. On the contrary, the presumption is in favor of it. In connecting himself with the organization, a member subjects himself as fully and completely to the power of administration, within legal limits, as to the power of legislation or prescription. To say courts can make rules and regulations for such associations would be absurd and ridiculous. To say they may interpret and apply them, in view of the powers reserved to, and exercised by, the governing bodies of the association, would be as plainly subversive of contractual right.'

"Our court in Grand International B. of L. Engineers v. Green, supra [210 Ala. 496, 98 So. 569], recognized the general rule as stated in the above-noted authorities, with the qualification, also generally recognized, that the 'associations must act in good faith and must not violate the laws of the land or any inalienable right of their members.'" (Authorities omitted.)

As stated in Alabama State Federation of Labor v. McAdory, 246 Ala. 1, at page 19, 18 So.2d 810, at page 825:

"It seems to be established by the decided weight of authority" (citations omitted) that a rule of a labor union forbidding its members to work with nonunion men or members of a rival organization is valid. * * *"

Counsel for appellee argue that the placing of Moss and the Diplomat Inn on appellant's defaulter's list, even though done peaceably, would result in an interference with the contractual relations existing between Moss and Pello, in that Pello could only continue in Moss' employment at the risk of being penalized by the Federation of which he is a member. In this connection appellee relies upon Hardie-Tynes Mfg. Co. v. Cruise, 189 Ala. 66, 66 So. 657. It is stated therein "that interference with existing contracts of service by inducing those so contracting to violate their agreements is such a wrong as may be enjoined in equity." This principle cannot be deemed applicable to the present factual situation in that by the contract of employment between Moss and Pello it was specifically provided in effect that Pello was at liberty to cease his employment by reason of any requirement of the Federation, and that the bylaws and regulations of the Federation were incorporated into the contract. Thus Pello was given the right by the contract to determine whether he would or would not continue in Moss' employment should the rules or bylaws of the Federation be breached by Moss. In the contract Moss represented that no claim existed against him in favor of any member. In truth and in fact Charles Drake's claim against Moss had been allowed at this time, and the Star Belles' claim was on file, and was subsequently allowed by the Federation.

In Miami Federation of Musicians, etc. v. Wompearce, Inc. et al. (Fla.), 76 So.2d 298, the action was to enjoin the local musician's union from placing or keeping the Plaza Theatre in Miami on the defaulter's list of the union. The theatre had been a

white elephant so far as former lessee-operators were concerned and entertainers appearing therein had suffered loss of pay. The lower court, at the behest of a new lessee enjoined the respondents from placing or keeping the theatre on its defaulter's list, and from refusing to permit members of the Miami Local of the American Federation of Musicians to work at the theatre, on the ground that the alleged acts of omission in paying the former entertainers could not be attributable to the present lessee.

In reversing this decree, the Supreme Court of Florida held that injunctive process is not available to prevent, directly, a union's enforcement of its own rules and regulations by disciplinary action against its members where no act of violence, intimidation, illegal picketing or boycotting is involved. To like effect see Radio Station KFH Co. v. Musicians Ass'n, 169 Kan. 596, 220 P.2d 199.

The Florida court further wrote:

"* * * Certainly, upon all the evidence, it must be concluded that there existed, from the defendant union's point of view, a genuine grievance or dispute with the parties currently interested in the theatre; and under the circumstances, the union's 'boycott,' if the simple withholding of services can be considered a boycott (see Paramount Enterprises v. Mitchell, 104 Fla. 407, 140 So. 328, 331; 31 Am.Jur., Labor, Sec. 265, p. 964; Opera on Tour v. Weber, 285 N.Y. 348, [286 N.Y. 565,] 34 N.E.2d 349, 35 N.E.2d 920, 136 A. L.R. 267), would be primary and lawful for the purpose of securing certain demands from the owner or current lessee, and not secondary and unlawful in the sense that pressure is brought against a third party with whom there exists no dispute in order to coerce his support in obtaining favorable settlement of a dispute with another. Teller, Labor Disputes and Collective Bargaining, Vol. 1, p. 455; Truax v. Corrigan, 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254; 31 Am.Jur. 957."

We concur in the Florida court's apparent doubt that the publishing of the defaulter's list in the magazine of the Federation constituted a "boycott." Certainly, the constituent elements of a boycott are evanescent in this situation. Removed from the background of a labor dispute it would appear to be nothing more than credit information for the members of the Federation. This is a lawful purpose and lawful action on the part of the Federation. That the members of the Federation might be subject to disciplinary action by the union (and not by Mackey) should they furnish services to one on the union's defaulter's list is a matter of internal operation of the union, and of no concern to the complainant in this case.

From the evidence it appears that a genuine grievance existed between the Federation and the complainant. Certainly there was nothing unlawful in the Federation's action in placing Moss and the Diplomat on its defaulter's list for the information of its members. Mackey's only act was to notify Pello by letter of this fact. The union's action in the Drake claim was taken after notice to Moss and an opportunity to present his answer. As to this claim Moss' attitude is well illustrated by the following from his testimony:

"Q Did you file any action or make any claim before the American Federation of Musicians presented this claim to you that Charles Drake couldn't do that which he was supposed to do?

"MR. SMITH: We object to this, if the Court please.

"THE COURT: All right. Answer the question.

"*BY MR. HUGH MADDOX: Continuing)*

"Q Did you?

"A Well, I want to say this. I have never understood why that someone in New York or Newark, New Jersey, would give me fifteen days to an-

swer a claim up there. I don't understand this.

"Q I see. You don't understand this.

"A Now, if it was a Court down here, I am going to do this, but not for a Musicians Union or any other union. I will do it of my own free will * * *."

It is clear that under the pleadings, evidence, and legal principles governing, the issuance of the temporary injunction against Mackey, after hearing, was erroneous. For this reason the decree is due to be reversed and one is here rendered dismissing the bill.

Reversed and rendered.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.