This is an appeal from a declaratory judgment rendered in favor of the Mobile County Board of Realtors, Inc., and against Henry Wells, holding that Wells violated the Bylaws of the Mobile County Board of Realtors, Inc., the Code of Ethics of the National Association of Realtors, and the Code of Ethics and Arbitration Manual of the National Association of Realtors, and further holding that the decision of the *Page 142 
Mobile County Board of Realtors, Inc., to expel Wells from membership was proper. We reverse.
On 7 July 1977, A.C. Reeves and Margie Powles, a salesperson associated with Reeves, filed a complaint with the Board charging Ann Nichols with unethical conduct, alleging that she sold a home upon which the Reeves agency had obtained an exclusive listing agreement. The complaint was later amended to request that the Professional Standards Committee of the Board determine that Century 21 Reeves Realty, Inc., was entitled to the listing side of a commission earned by Bay Agency, Inc. (of which Henry E. Wells is the principal broker), for whom Nichols worked.
On 11 October 1977, Reeves and Powles executed agreements to submit the controversy regarding the entitlement of the listing side of the commission to arbitration pursuant to the bylaws of the Board, the Code of Ethics of the National Association of Realtors, and the Code of Ethics and Arbitration Manual of the National Association of Realtors. On 17 October 1977, Wells refused to submit the controversy to arbitration.
On 22 November 1977, the directors of the Board met to take disciplinary action regarding the refusal of Wells to submit to arbitration. Upon consideration of the matter, at a hearing conducted in compliance with the requirements set forth in the Code of Ethics and Arbitration Manual of the National Association of Realtors, the directors determined that Wells should be expelled from membership in the Board. The Board held in abeyance its decision to expel Wells until a final determination of the rights of the parties could be made by the circuit court. That court held as stated in the initial paragraph of this opinion, and also that the Board's hearing determining whether to expel Wells was held in compliance with all applicable rules and standards of the Board, and that the expulsion of Wells was consistent with all applicable rules and standards. This is Wells' appeal from that judgment.
Wells contends there is not a justiciable controversy existing between the parties which suffices to invoke the jurisdiction of the court to enter a declaratory judgment, that the section of the Board's bylaws which requires its members to submit to arbitration is void as against public policy, that the arbitration procedure provided in the Board's by-laws does not strictly comply with the Alabama Arbitration Statute, §6-6-3, Code 1975, and is unlawful, and that the Board's expulsion of Wells was therefore improper.
The Board contends there is an existing controversy between the two parties and that any consideration of the arbitration procedure provided in the Board's bylaws is immaterial. The Board, instead, contends the issue is simply whether a voluntary, incorporated association may expel one of its members who is deemed to have known and assented to the association's bylaws, rules and regulations, and who is found to be in violation of the association's bylaws, rules and regulations, when that member is expelled by procedures consistent with the association's constitution, bylaws, rules and regulations.
There is clearly a controversy existing between the parties capable of determination by an action for declaratory judgment. It is well established that the constitution, bylaws, rules and regulations of a voluntary association constitute a contract between the association's members, which is binding upon each member so long as the bylaws, etc., remain in effect. MedicalSociety of Mobile County v. Walker, 245 Ala. 135, 16 So.2d 321
(1944). Any dispute between a voluntary association and one of its members concerning the construction or validity of the association's constitution, bylaws, rules and regulations constitutes a dispute as to the construction or validity of a written contract. The Board contends that it properly expelled Wells. Wells contends that the Board's expulsion of him was improper. That constitutes the justiciable controversy.
Wells contends that the bylaws of the Board which require members to submit *Page 143 
any controversy which arises out of the real estate business to arbitration for determining are void as against public policy. The rules of law regarding voluntary associations are well developed in Medical Society of Mobile County v. Walker, surpa, where the court stated,
 "Membership in a voluntary association is a privilege which may be accorded or withheld, and not a right which can be gained independently and then enforced. * * * Societies of the sort here considered have the right to make their own rules upon the subject of admission or exclusion of members, and these rules may be considered as articles of agreement, to which all who are members become parties. * * * They may make their own constitution and by-laws; and so long as they remain unchanged, each member is alike bound and shielded by them. The society too must observe its own constitution and by-laws until it changes them in legal form. Of course such constitution and by-laws, to be obligatory, must not contravene public law, nor any principle of public policy. Weatherly v. Medical Surgical Society of Montgomery County, 76 Ala. 567.
 "* * * [A] corporate franchise is property, incorporeal, it is true, but deemed none the less valuable in the eye of the law. Each individual member, as remarked by Sir William Blackstone, is said in such cases to be the owner of the franchise, and his privilege of membership, we may add on high authority, is, therefore, properly subject to the protection of the courts as valuable, although it may have no actual market value. * *
 `* * * In High on Extraordinary Remedies, § 294, it is said to be now a well established rule, that "mandamus will lie to restore to his corporate rights a member of a corporation who has been improperly disfranchised or irregularly removed from his connection with the corporation. And while the court will not inquire into the merits of the decision of corporate authorities in expelling or removing a corporator in the regular course of proceedings, yet, if the amotion has been conducted without due authority, the courts will interfere by mandamus to compel the restoration of the member to his corporate franchise." * * * In the light of these authorities, and the numberless adjudged cases upon which they are predicated, and by which they are fully sustained, we think the rule may be regarded as firmly established, that, in every case of the disfranchisement of a corporator, the courts will entertain jurisdiction to restore him by mandamus, where the cause or ground of disfranchisement is legally insufficient, or where the proceedings by which it has been attempted are irregular, according to, or as tested by the charter or by-laws of the corporation. * * *'" (Emphasis added.) 245 Ala. 138, 139, 16 So.2d 324-25.
Later, in Mackey v. Moss, 278 Ala. 55, 175 So.2d 749 (1965), the court stated, viz.:
 "Voluntary associations have the right to make their own regulations as to the admission or expulsion of members, and one who becomes a member assents, by his membership, to the constitution and rules and procedure adopted by such association. The constitution rules and bylaws constitute a `contract' between the association and its members and the rights and duties of the members as between themselves and the association are measured by the terms and such constitution and bylaws.
 "In Shaup v. Grand International Brotherhood, etc., 223 Ala. 202, 135 So. 327, this court quoted with approval the following language from State ex rel. Smith v. Kanawha County Court, 78 W. Va. 168, 88 S.E. 662, 20 A.L.R. 1030:
 "`"The right of a voluntary association to interpret and administer its own rules and regulations is as sacred as is the right to make them, and there is no presumption against just and correct action or conduct on the part of its supervising or appellate authorities and tribunals. On the contrary, the presumption is in favor of it. In connecting himself with the organization, a member subjects himself *Page 144 
as fully and completely to the power of administration, within legal limits, as to the power of legislation or prescription. To say courts can make rules and regulations for such associations would be absurd and ridiculous. To say they may interpret and apply them, in view of the powers reserved to, and exercised by, the governing bodies of the association, would be as plainly subversive of contractual right."
 "`Our court in Grand International B. of L. Engineers v. Green, supra [210 Ala. 496, 98 So. 569], recognized the general rule as stated in the above-noted authorities, with the qualification, also generally recognized, that the "associations must act in good faith and must not violate the laws of the land or any inalienable right of their members."'
(Authorities omitted.)" (Emphasis added.) 278 Ala. at 59, 175 So.2d at 752-53.
We note that this is not a petition for the writ of mandamus by Wells seeking reinstatement to membership in the association. The Board filed this action for declaratory judgment to determine whether its expulsion of Wells was proper. In his answer, Wells contended the expulsion was wrongful. On appeal, Wells does not contend that the procedure
used by the Board to expel him from membership was unlawful. He contends, rather, that the reason for his expulsion was wrongful.
Under the authorities above cited, and in the posture of the instant case, our inquiry is indeed twofold: whether Wells was expelled with a procedure consistent with the Board's constitution, bylaws, rules and regulations, and whether the reason for Wells' expulsion was wrongful. The procedure employed by the Board was found by the trial court to be in compliance with the bylaws, rules and regulations of the Board. The trial court's finding in this regard is supported by the record, and, as we noted, Wells does not dispute the propriety of the procedure employed.
However, the reason for Wells' expulsion, refusal to submit the controversy to arbitration, was, as Wells contends, wrongful. As long ago as 1840, in Bozeman v. Gilbert, 1 Ala. 90
(1840), the court noted that an individual has a right to have his rights determined in a court of law. The court stated:
 "A mere agreement to decide a controversy by arbitration cannot be enforced at law, or in equity, because no one can effectually waive his right to have his suits determined at the proper Courts provided by the laws of his country." (Emphasis added.) 1 Ala. at 91
The public policy of this state is to encourage arbitration and amicable settlements of differences between parties; but public policy also holds void an agreement in advance to oust or defeat the jurisdiction of all courts, as to all differences between parties. As the Court stated in Headley v. Aetna Ins.Co., 202 Ala. 385, 80 So. 466 (1918):
 "A covenant in a contract, whether of insurance or of other matters, to submit every matter of dispute between the parties, growing out of such contract, to arbitration or to a board of appraisers, to the end of defeating the jurisdiction of courts as to be subject-matter, are [sic] universally held to be void, as against public policy. There need be no such express intent to so defeat the jurisdiction; if the necessary effect of the covenant will inevitably so operate, it is held to be void because against public policy. * * * The policy of this state favors arbitration and amicable settlements of differences between parties; but it does not favor or allow agreements in advance to oust or defeat the jurisdiction of all courts, as to all differences between parties. Const., § 84; Code, §§ 2908-2923.
 "A general provision in a contract for the arbitration of any dispute which may arise thereunder does not oust the courts, nor bar a suit either at law or equity. Stone v. Dennis, 3 Port. 231; Kinney v. Baltimore Ohio Employes' Ass'n, 35 W. Va. 385, 14 S.E. 8, 15 L.R.A. 142." (Emphasis added.)
That part of the Board's bylaws, rules, regulations, and constitution, requiring *Page 145 
its members to submit to arbitration all controversies arising out of the real estate business has the necessary effect of defeating the jurisdiction of all courts in advance of any dispute between the Board's members. This is not a case where arbitration is optional with the parties and both enter into it voluntarily and at arm's length after a dispute has occurred between them. Rather, this is a case where there is no option. Arbitration is mandated by the Board's bylaws. Any dispute between them arising out of the real estate business, whenever
the dispute arises, is required to be submitted to arbitration, else the party who refuses to submit his case to arbitration is subject to expulsion from Board membership.
For a voluntary association's constitution and bylaws to be obligatory upon its members, the constitution and bylaws "must not contravene public law, nor any principle of public policy."Medical Society of Mobile County, surpa; Weatherly v. Medical Surgical Society of Montgomery County, 76 Ala. 567 (1884). Since the arbitration provision in the Board's bylaws in the case at bar violates the dictates of public policy, it is not obligatory on Board members, and the Board's reliance on that provision to expel Wells from membership was, therefore, improper. The cause is due to be reversed and remanded for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES and ALMON, JJ., concur.