MOORE, Judge.
Freemanville Water System, Inc. (“FWS”), appeals from a judgment of the Escambia Circuit Court (“the trial court”) in favor of Wayne Drew and Johnny Shell. We affirm the trial court’s judgment.

Background

FWS is a voluntary incorporated association that was formed to construct, maintain, and operate a water system to supply its members with water. The bylaws of FWS provide, in pertinent part, that special meetings of the members of FWS must be called whenever a petition requesting such meeting is signed by at least 10 percent of the members and presented to the secretary or to the board of directors of FWS. In December 2013, Drew and Shell, acting as members of FWS, presented a petition to FWS requesting a special meeting and calling for the removal of Edward Adams as the president and chairman of the board of FWS. That petition bore 120 signatures purportedly of different members of FWS, more than enough to surpass the 10 percent thresh *1203 old required for the calling of a special meeting of FWS’s members.
Adams and Jethro Dailey, a member of the FWS board of directors, reviewed the petition and questioned the legibility and legitimacy of some of the signatures. They submitted the petition to Mark Ryan, an attorney. Based on Ryan’s advice, the FWS board resolved to hire Ryan and his law firm to perform an investigation into the signatures on the petition. Based on that investigation, Ryan and his law firm determined that the petition was not supported by a sufficient number of signatures because, for various reasons, 25 of the signatures on the petition were invalid. Ryan recommended that the board deny the request for a special meeting and that it require Drew and Shell to pay the costs of the investigation through a special assessment. The FWS board voted to follow Ryan’s recommendations and issued a resolution ordering Drew and Shell to pay $29,796.40 to cover the costs of the investigation by May 15, 2014, or else lose then-water services.
On May 15, 2014, Drew and Shell filed a complaint in the trial court seeking a declaratory judgment and injunctive relief against FWS. Drew and Shell requested that the trial court declare that the FWS board did not have the authority to issue a special assessment against them for the payment of the legal fees or to take any action to affect their membership status as a result of their refusal to pay that special assessment. Drew and Shell prayed that the trial court enter a permanent injunction to prevent the FWS board from enforcing the special assessment and from otherwise adversely affecting their membership status and rights.
The trial court conducted a trial on January 8,2015, at which it received ore tenus evidence and reviewed exhibits, including the corporate charter and bylaws of FWS. Article VII of the Declaration of Incorporation of FWS (“the corporate charter”) provides:
“Liability of Members: The private property of the members of this corporation shall not be subject to the payment of the debts of this' corporation to any extent whatsoever.”
Article IX, Section l(i), of the bylaws of FWS grants to the board the power
“[t]o levy assessments against the members of the corporation in such manner and upon .such proportionate basis as the directors deem equitable, and to enforce collection of such assessments by the suspension of water service or other legal methods.”
That same subsection further provides, in pertinent part:
“The board of'directors shall have the option to suspend the service of any member who has not paid such assessment within 30 days from the date the assessment was due, provided the corporation must give the member at least 15 days’ written notice at the address of the member on the books of the corporation of its intention to suspend such service if the assessment is not paid....”
On March 10, 2015, the trial court entered a final judgment, providing, in pertinent part:
“[TJhis Court is of the opinion that [Drew and Shell] are entitled to the relief sought based on three separate and independent reasons.
“First of all, it is clear from the evidence that the $29,796.40 legal bill from [the law firm] Ryan and Wilkes to conduct the investigation of the signatures was a debt or obligation incurred, authorized, and created by the Board of Directors and thus constitutes a ‘corporate debt.’ Director Jethro Dailey testified it was the intent of the Board of Directors to pass this debt on to [Drew *1204 and Shell] for payment. However, the Court here declares that the passing of this corporate debt on to [Drew and Shell] for payment is expressly prohibited by Article VII of the Charter of Incorporation. This Court further declares that any provision of the By-laws that is inconsistent with Article VII, particularly Article IX, Section l(i), when utilized to seek payment of corporate debts from the members, is void.
“Secondly, this Court declares that even if Article IX, Section 1(i) of the Bylaws was not voided by operation of Article VII of the Charter of Incorporation, the $29,796.40 assessment made against [Drew and Shell] thereunder was nevertheless improper, it is apparent that [FWS] has erroneously construed this provision of the By-laws to mean it is free to pick and choose among the membership what member it desires to pay its bills and then assess the chosen member accordingly. It is here noted that By-laws of a voluntary association like [FWS] constitute a contract between the association and its members. Wells v. Mobile County Board of Realtors[, Inc.], 387 So.2d 140 [(Ala. 1980)], and that under Alabama law, contracts will not be construed so as to render them oppressive or inequitable as to either party or so as to place one of the parties at the mercy of the other. Dawkins v. Walker, 794 So.2d 333 [ (Ala. 2001) ]. Applying these principles of law to the facts of this case, the Court is of the opinion that [FWS] ’s construction or interpretation of Article IX, Section l(i) of the By-laws is erroneous because it not only places one party to the contract at the mercy of the other, but it also twists and contorts the general understanding or common meaning of the term ‘assessment.’ This Court notes that ordinarily an ‘assessment’ is viewed as a charge levied on each member of an association in the nature of a tax or some other burden for a special purpose not having the character of being susceptible of anticipation as a regularly recurring obligation as in the case of periodic dues. National Labor Relations Board v. Food Fair Stores, Inc., et al., 307 F.2d 3 [ (3d Cir.1962) ]. Similarly, 6 Am.Jur.2d., Associations and Clubs, § 25, states that, ‘[a]n assessment is a charge of a non-recurring nature upon all members of an association.... ’ (emphasis added). It is the opinion of this Court that the wording of Section l(i) of Article IX of the By-laws, if construed correctly, is entirely consistent with these definitions, i.e., ‘To levy assessments against the members of the corporation....’ (emphasis added). Accordingly, if an assessment is to be made, it must be made to all members. Otherwise, a targeted member will end up in the oppressive or inequitable situation in which [Drew and Shell] now find themselves.
“Thirdly, even assuming that [FWS] had the authority to pick and choose among the membership whom it wanted to pay a corporate debt or obligation, its decision in that regard must nevertheless be equitable. Section l(i) of Article IX of the By-laws may provide some discretion to the [FWS] Board of Directors to levy assessments, but it is not unbridled discretion. It is the opinion of this Court that fundamental fairness and equity dictate that there must be some reasonable basis for assessing [Drew and Shell] $29,796.40. The Court is of the opinion that, based on the evidence, the Board of Directors’ decision was not fundamentally fair and equitable in this regard.
“The Court recalls and here notes that the attorney for [Drew and Shell] asked each director who testified at trial what evidence did he have at the time he voted to assess [Drew and Shell] that *1205 either [Drew or Shell] forged someone’s name on the petition or misrepresented its true purpose to anyone or did anything wrong. Every director, without exception, testified he had none. Every director recognized that each member, including [Drew and Shell], had the right to petition the Board of Directors to call a meeting for the purpose of removing an officer. Every director testified that there was no provision in the corporate Charter, By-laws, or membership application that would place a member on notice that he would be responsible for paying all costs associated with a petition under Section 6 of Article VIII of the By-laws in the event the petition failed. Furthermore, there was no witness called by [FWS] who offered any evidence of wrongdoing by [Drew or Shell]. Moreover, the state of the evidence in the record is such that this Court cannot even determine whether any forgeries or misrepresentations in fact took place, much less who committed them. What is known by the Court is that there is a total disconnect between any wrongful conduct by [Drew and Shell] and their being called upon to pay this $29,796.40 assessment. When all the evidence of record is reconciled and considered as a whole, the decision of the Board of Directors to impose this assessment against [Drew and Shell] was an arbitrary and capricious act; was inconsistent with, and unsupported by, its governing documents; was neither equitable nor fundamentally fair; and has and will cause irreparable injury and damage to [Drew and Shell].”
The trial court permanently enjoined FWS from taking any action against Drew or Shell to enforce the “special assessment” and from taking any adverse action affecting Drew and Shell’s membership status and rights. FWS filed its notice of appeal to the Alabama Supreme Court on April 21, 2015; that court transferred the appeal to this court, pursuant to § 12-7-6(6), Ala. Code 1975.

Analysis

On appeal, FWS argues that the trial court erred in issuing the permanent injunction.
“‘To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest.’
“TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999), overruled on another point of law, Holiday Isle, LLC v. Adkins, 12 So.3d 1173 (Ala.2008).”
Sycamore Mgmt. Grp., LLC v. Coosa Cable Co., 42 So.3d 90, 93 (Ala.2010). FWS challenges each of the trial court’s grounds for issuing the permanent injunction, essentially arguing that Drew and Shell should not have prevailed on the merits.
“The entry of a permanent injunction is reviewed de novo, TFT, Inc.[ v. Warning Sys., Inc.], 751 So.2d [1238] at 1241 [(Ala.1999)]; however, this Court has recognized that ‘a trial court’s consideration of ore tenus testimony has a bearing upon the standard of review we apply to the entry of a permanent injunction.’ Classroomdirect.com, LLC v. Draphix, LLC, 992 So.2d 692, 701 (Ala.2008). See also Kappa Sigma Fraternity v. Price-Williams, 40 So.3d 683 (Ala.2009)(according a presumption of correctness to portions of the trial court’s decision based on representations of counsel regarding a settlement agreement where a permanent injunction was issued).”
*1206 Sycamore Mgmt. Grp., LLC, 42 So.3d at 93.
As it did at trial, FWS maintains on appeal that it had the authority to issue a special assessment against Drew and Shell pursuant to Article IX, Section l(i), of its bylaws. The trial court initially determined that FWS could not rely on Article IX, Section l(i), to recover the legal fees from Drew and Shell because Article VII of the corporate charter prohibits FWS from subjecting the personal property of its members to collection of the debts of the corporation.
Section 10A-3-2.31, Ala.Code 1975, provides, in pertinent part, that “[t]he bylaws may contain any provisions for the regulation and management of the affairs of a corporation not inconsistent with law or the certificate of formation.” A bylaw is invalid and may not be given any effect to the extent the bylaw conflicts with the corporate charter. See Roach v. Bynum, 403 So.2d 187 (Ala.1981). FWS does not quarrel with that basic principle, but, rather, it maintains that the trial court erred in determining that the legal fees constituted a debt of the corporation within the meaning of Article VII of the corporate charter.
Under Alabama law, the corporate charter of a voluntary association, such as FWS, is deemed to be in the nature of a binding contract between the association and its members. Brotherhood’s Relief & Comp. Fund v. Rafferty, 91 So.3d 693 (Ala.Civ.App.2011) (citing Mackey v. Moss, 278 Ala. 55, 175 So.2d 749, 752 (1965)). The terms of that agreement govern the relationship between the association and its members. Id. The construction of undefined terms in the association’s charter “ ‘belongs, not to the court, but to the board, council, or other tribunal provided for the purpose in the organization, if any.’ ” Shaup v. Grand Int’l Bhd. of Locomotive Eng’rs, 223 Ala. 202, 204, 135 So. 327, 328 (1931) (quoting Simpson v. Grand Int’l Bhd. of Locomotive Eng’rs, 83 W.Va. 355, 98 S.E. 580, 587 (1919)). However, a court may interfere if the governing body, in exercising its interpretive powers, “ ‘transgresses the bounds of reason, common sense or fairness.’ ” Id.
In its brief to this court, FWS does not set forth any general definition of the phrase “debts of this corporation.” In ordinary parlance, a “debt” refers to “[l]iability on a claim; a specific sum of money due by agreement or otherwise.” Black’s Law Dictionary 488 (10th ed.2014). FWS does not disagree with the trial court’s legal conclusion that a debt is a “corporate debt” if it is incurred under the authority, and on behalf, of the corporate entity. See generally Wright v. Alan Mills, Inc., 567 So.2d 1318, 1319 (Ala.1990) (“At the outset, we note that a corporation is a distinct entity to be considered apart from the individuals who operate it, and that a corporation’s obligations and transactions are to be considered separately from those of the corporation’s stockholders.”). Furthermore, as the trial court correctly found, the undisputed evidence shows that FWS, through its board, contracted with Ryan and his law firm to pay the legal fees at issue. As such, the legal fees would be considered a “corporate debt” in the usual meaning of that phrase.
Nevertheless, FWS ■ maintains that it was within the board’s authority to characterize the legal fees as something other than a corporate debt. FWS points out that its contract with Ryan and his law firm was not made in the usual course of FWS’s business to supply water service to its-members, that the board used its business. judgment to determine that the debt should be incurred to assure the validity of the signatures before acting on the petition,. and that it was Drew’s and Shell’s alleged “improper actions” that led the FWS board to incur the debt. FWS maintains that the legal fees do not constitute a *1207 corporate debt because the fees did not arise from the ordinary corporate business of providing water service. However, regardless of the reason FWS incurred the debt, it remains undisputed that it did so in its corporate capacity and in furtherance of the internal governance of the corporation itself. FWS fails to explain how, under these circumstances, the debt reasonably can be considered anything other than a corporate debt. Accordingly, the trial court did not err in concluding that the legal fees constituted a corporate debt within the meaning of Article VII of the FWS corporate charter.

Conclusion

Under Article VII of its corporate charter, FWS could not make any of its members personally liable for corporate debt. We agree with the trial court that Article VII of the corporate charter supersedes Article IX, Section l(i), of FWS’s bylaws and that it prevents FWS from passing its corporate debt onto its individual members. Because the facts and the law conclusively show that the legal fees at issue are a debt of FWS, that debt could not be recovered from Drew and Shell. The trial court correctly enjoined FWS from enforcing its special assessment against Drew and Shell and from taking any adverse action against Drew and Shell for their nonpayment of that special assessment. Accordingly, the trial court’s judgment is affirmed.[1]
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. Because we affirm the judgment on the first ground stated by the trial court, we do not address the remaining grounds.